IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| WI-LAN INC. § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CASE NO. 6:10-CV-521 |
| § | PATENT CASE |
| ALCATEL-LUCENT USA INC., ET AL. § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are HTC Corporation, HTC America, Inc., and Exedea Inc.'s (collectively "HTC") Motion to Sever Claims (Docket No. 72) and Motion to Transfer Venue to United States District Court for the Southern District of California Under U.S.C. § 1404(a) (Docket No. 73). After consideration of the parties' briefing, HTC's motions are **DENIED**.

**BACKGROUND**

On October 5, 2010, Wi-LAN, Inc. ("Wi-LAN") filed this action alleging that eleven defendants[1] infringed one or more of the following four patents: United States Patent Nos. 6,088,326 ("'326 patent"); 6,195,327 ("'327 patent"); 6,222,819 ("'819 patent"); and 6,381,211 ("'211 patent"). In December 2010, the three LG defendants were dismissed with prejudice. HTC filed the motions

---

[1] The eleven defendants can be viewed as five corporate groups: Alcatel-Lucent USA Inc. ("Alcatel"); Ericsson Inc., a subsidiary of Telefonaktiebolaget LM Ericsson (collectively "Ericsson"); Sony Ericsson Mobile Communications (USA) Inc., a subsidiary of Sony Ericsson Mobile Communications AB (collectively "Sony"); HTC America, Inc. and Exedea Inc., subsidiaries of HTC Corporation (collectively "HTC"); and LG Electronics Mobilecomm U.S.A., Inc. and LG Electronics U.S.A., Inc., subsidiaries of LG Electronics, Inc. (collectively "LG"). *See* Original Complaint, Docket No. 1, ¶¶ 2–6.

to sever and transfer on February 14, 2011.

The four patents-in-suit involve data transmission over wireless networks. Wi-LAN alleges that each defendant makes, sells, or offers for sale products that infringe the patents by implementing certain releases of the 3rd Generation Partnership Project ("3GPP") standard.

## MOTION TO SEVER

**Applicable Law**

HTC first moves to sever under Rule 21, which states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. In determining whether parties should be severed under Rule 21, a court looks to Rule 20 to determine whether the parties were misjoined. *Ams. For Fair Patent Use, LLC v. Sprint Nextel Corp.*, No. 2:10-cv-237-TJW, 2011 U.S. Dist. LEXIS 2947, at *5 (E.D. Tex. Jan. 12, 2011) (citing *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)). Joinder under Rule 20 is proper if (1) the claims arise out of the "same transaction occurrence, or series of transactions or occurrences" and (2) there is a "question of law or fact common to all defendants." FED. R. CIV. P. 20(a)(2). "Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness of the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

**Analysis**

HTC argues that joinder is improper because the defendants are not involved in related infringing activities or acting in concert. This Court has recognized that the first prong of Rule 20(a)(2) is satisfied "if there is some connection or logical relationship between the various

transactions or occurrences." *MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004) (citing *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993)). "A logical relationship exists if there is some nucleus of operative facts or law." *Id.*

Here, the first prong of 20(a)(2) is satisfied because there is a nucleus of operative facts and law relevant to all defendants. All defendants in the instant suit allegedly make, sell, or offer for sale wireless devices that implement certain releases of the 3GPP standard. Therefore, questions of fact involving the alleged infringement will be similar among these products.

HTC argues that joinder is improper because the accused product types are so different. However, HTC's product comparison fails to recognize that the product types have similar technical features and that these features are the focus of the infringement allegations. Wi-LAN alleges that HTC's and Sony's handset products infringe; it alleges that Alcatel's and Ericsson's base station products infringe. While these are generally different product types, both are involved in wireless data transmission. In fact, handsets (i.e., cellular telephones) must typically communicate with base stations in order to communicate with other handsets. Both product types send and receive data via wireless communication protocols that comply with the 3GPP standard. This method of communication is the domain of the patents-in-suit. Even though the product types have general differences, their accused properties—specific communication methods—are tightly interrelated.

HTC next argues that Wi-LAN does not allege all four patents against all defendants. Rather, the infringement allegations align according to product type. Wi-LAN alleges infringement of the '326, '327, and '819 patents against base station products and alleges infringement of the '211 and '819 patents against handset products. HTC argues that this division along product type further

supports severance. However, HTC's argument does not paint a complete picture. The '211 patent is a continuation of the '326 patent, and their specifications are nearly identical.[2] All of the patents-in-suit "share similar disclosures, identical drawings, common priority dates and two common inventors." Docket No. 80, at 4. Thus, factual determinations regarding one patent are likely to be relevant to the other patents.

HTC has alleged four related patents against defendants that allegedly make, sell, or offer for sale wireless communications devices. The allegations focus on the products' implementation of certain releases of the 3GPP wireless communications standard. The close relationship among the patents, the interdependence of the accused products, and the narrow focus on a specific wireless communication standard provides the required logical relationship among the defendants, yielding a nucleus of both fact and law sufficient to warrant joinder under Rule 20. Even so, the Court can and will consider any arguments defendants may wish to advance for separate trials as the date of trial approaches. Separate trials, if warranted, make more sense than severing this multiple-defendant case into separate cases resulting in all of the inefficiencies and potential inconsistencies that could well arise from severing the common issues of law and fact that are prominent in this case. Therefore, HTC's motion to sever is **DENIED**.

## MOTION TO TRANSFER

**Applicable Law**

HTC next moves to transfer the case to the Southern District of California under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the

---

[2] The '326 patent claims relate to transmission controllers and transmission methods; the '211 patent claims relate to reception controllers and reception methods.

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200. Furthermore,

5

though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

**Analysis**

HTC's motion to transfer, only as to HTC, is predicated on its motion to sever. Because the motion to sever is denied, the motion to transfer should also be denied. *See Ams. For Fair Patent Use*, 2011 U.S. Dist. LEXIS 2947, at *13 ("After denying Verizon's motion to sever, it is clear Verizon's motion to transfer venue should also be denied."). Aside from a cursory statement that the court has discretion to transfer the entire action to the Southern District of California, HTC's transfer argument focuses entirely on HTC without presenting evidence regarding the convenience of the five remaining defendants. Additionally, none of the remaining five defendants have joined in HTC's motion to transfer venue. Therefore, HTC has failed to present sufficient evidence showing that transfer to the Southern District of California is clearly more convenient for the parties and witnesses than the Eastern District of Texas. The Court will nonetheless analyze the 1404(a) factors based on the evidence of record.

*Threshold*

Neither party disputes that this claim could have been brought in the Southern District of California. Therefore, the threshold determination regarding jurisdiction is undisputed.

*The Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer

analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *id.* at 314–15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). However, documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009). Presumably, the bulk of the discovery material relating to a corporate party are located at the corporate headquarters. *See In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

This factor weights strongly against transfer. None of the parties to this suit are located in the Southern District of California. Wi-LAN is headquartered in Canada. Three defendants—Telefonaktiebolaget LM Ericsson, Sony Ericsson Mobile Communications AB, and HTC Corporation—are international; accessing evidence from these locations is inconvenient regardless of the forum. HTC America, Inc. is headquartered in Bellevue, Washington, which is closer to the Southern District of California than the Eastern District of Texas. Three defendants are headquartered closer to the Eastern District of Texas: Exedea Inc. in Houston, Texas; Sony Ericsson Mobile Communications (USA) Inc. in Atlanta, Georgia; and Alcatel-Lucent USA Inc. in Murray Hill, New Jersey. Finally, Ericsson Inc. is headquartered within the Eastern District of Texas in Plano, Texas; Alcatel-Lucent USA Inc. also maintains an office in Plano, Texas.

Out of nine parties, four are international, one is closer to the Southern District of California,

three are closer to the Eastern District of Texas, and one is within the Eastern District of Texas. Therefore, this factor weighs strongly against transfer because most relevant evidence is located closer to the Eastern District of Texas.

*The Availability of Compulsory Process to Secure the Attendance of Witnesses*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

HTC relies heavily on the potential third-party witness, Qualcomm, located in San Diego, California, which is in the Southern District of California. Qualcomm chipsets are used in some of the accused HTC products. HTC claims that Qualcomm witnesses will not appear unless compelled to do so and that their "documents and source code [are] central to proving non-infringement." Docket No. 73, at 6. In contrast, Wi-LAN identifies Airspan Networks, Inc. ("Airspan") as an important third-party witness. Airspan, a wireless products company, applied for and prosecuted the four patents-at-issue and maintains its headquarters in Boca Raton, Florida. Finally, both HTC and Wi-LAN identify the two named inventors on all four patents as relevant third-parties: one resides in England and the other resides in the Eastern District of Texas.

This factor weighs slightly against transfer. The Eastern District of Texas has compulsory process over a named inventor and any former employees of Alcatel-Lucent USA Inc. and Exedea Inc. within the district. The Southern District of California has compulsory process over third-party

8

witnesses at Qualcomm. HTC identifies Qualcomm witnesses as important to its defense; however, the Eastern District of Texas has compulsory process over a named inventor who is potentially relevant to all parties. Thus, in balancing these concerns, this factor weighs slightly against transfer.

***The Cost of Attendance for Willing Witnesses***

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a

shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I*, 371 F.3d at 204 & n.3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *Id.* (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *Id.* at 1344. Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

This factor weighs strongly against transfer for the same reasons discussed regarding the first factor. Additionally, for third-party witnesses identified in San Diego, Plano, and Boca Raton, the Eastern District of Texas is more convenient for the group as a whole because it is, on average, closer.[3]

---

[3] The average travel distance from these three locations to the Eastern District of Texas is approximately 757 miles. The average travel distance from these three locations to the Southern District of California is approximately 1,173 miles.

*Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*"). There is no other litigation involving the patents-in-suit. The Court finds that there are no practical problems based on judicial economy; thus, this factor is neutral.

HTC asserts that the Southern District of California is a more efficient forum because it has been exposed to numerous cases involving Qualcomm technology. For support, HTC cites three cases from the Southern District of California involving Qualcomm; however, HTC fails to link the technology-at-issue in those cases to the technology-at-issue in this case. Therefore, this factor is neutral in the analysis.

*The Administrative Difficulties Flowing from Court Congestion*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative, and this factor alone should not outweigh other factors. *Id*.

Wi-LAN presents statistics showing that the "median time from filing to disposition by trial of civil cases in the Eastern District of Texas [is] 25.8 months, while the Southern District of California takes . . . 37.2 months." Docket No. 79, at 14. In response, HTC presents statistics regarding all civil cases—not just those that go to trial—to show that the Southern District of California is almost twice as fast as the Eastern District of Texas. There is evidence favoring each

district, and the Court finds that this factor is neutral.

### *The Local Interest in Having Localized Interests Decided at Home*

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

This factor weighs strongly against transfer. Ericsson Inc. and Alcatel-Lucent USA Inc. have a presence in the Eastern District of Texas. Ericsson Inc. maintains its headquarters in Plano, Texas; Alcatel-Lucent USA Inc. also maintains an office in Plano. HTC has presented no evidence that any party maintains a significant presence in the Southern District of California; however, it emphasizes that Qualcomm, a potential third-party, has a presence in the Southern District of California. Qualcomm's presence in the Southern District of California is not enough to overcome the local interest that the Eastern District of Texas has in this case. Two of the accused parties have a significant presence in the Eastern District of Texas, and none have such a presence in Southern District of California. Therefore, local interests weigh heavily against transfer.

*The Familiarity of the Forum with the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws*

The parties do not present evidence regarding the remaining two public factors; therefore, the Court finds that these factors are neutral.

*Conclusion: Transfer Factor Analysis*

In conclusion, three of the eight factors weigh strongly against transfer, one weighs slightly against transfer, and four are neutral. Therefore, HTC has not met its burden of showing that transfer to the Southern District of California is clearly more convenient for the parties and witnesses in this suit. Accordingly, HTC's motion to transfer venue to the Southern District of California is **DENIED**.

## CONCLUSION

For the reasons stated herein, HTC's motion to sever is **DENIED**, and HTC's motion to transfer venue is **DENIED**.

**So ORDERED and SIGNED this 30th day of September, 2011.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**