IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **WI-LAN INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:10-CV-521 |
| | § | |
| **ALCATEL-LUCENT USA INC., ET AL.,** | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 171); The Ericsson Defendants' Motion for Summary Judgment (Dkt No. 172); The Sony Mobile Defendants' Cross-Motion for Summary Judgment (Dkt No. 181); and The Ericsson and Sony Mobile Defendants' Motion to Strike Extrinsic Evidence (Dkt No. 352). Having considered the Parties' briefing and oral argument, the Court hereby **GRANTS** Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 171) and **DENIES** the Ericsson Defendants' Motion for Summary Judgment (Dkt No. 172) and the Sony Mobile Defendants' Cross-Motion for Summary Judgment (Dkt No. 181). The Court also **GRANTS** the Ericsson and Sony Mobile Defendants' Motion to Strike Extrinsic Evidence (Dkt No. 352).

## BACKGROUND

On February 15, 2008, Telefonaktiebolaget LM Ericsson ("Ericsson") and Sony Ericsson Mobile Communications (USA) Inc. ("Sony"; collectively, "Defendants") entered into identical Patent and Conflict Resolution Agreements ("PCR Agreements"). *See* Dkt. No. 171-1; Dkt. No. 171-2. The Parties executed the PCR Agreements to resolve a possible conflict of interest involving Wi-Lan, Ericsson, Sony, and the law firm of McKool Smith. Dkt. No. 171-1 at 1.

The PCR Agreements address four specific patents: U.S. Patent Nos. 5,282,222; RE37,802; 6,192,068; and 6,320,897. The Agreements refer to these patents, and their family members or foreign counterparts, as "the Wi-Lan Patents" (hereinafter, "PCR patents"). Dkt. No. 171-1 at 3, 15. Further, the PCR Agreements also address a specific set of products, UMTS/HSPA Products, defined as "any product complying with the 21–35 series of 3GPP agreed protocols and/or protocol standards setting body which include substantially corresponding to the 21–35 series of 3GPP agreed protocols irrespective of the frequency band (by the way of non-limiting example, including the ETSI TS-125 protocols), as well as any new releases or updates of such protocols." *Id.* at 3.

Three Articles in the PCR Agreements are germane to the resolution of the present motions. Article III is titled "Non-Assert and Release" and reads in relevant part:

> "Wi-Lan hereby irrevocably covenants that neither Wi-Lan nor its affiliates will, directly or indirectly, alone or by, with or through others, cause, induce or authorize, or voluntarily assist, participate or cooperate in, the commencement, maintenance or prosecution of any action seeking or having the tendency to establish any liability on the part of, or to exact any sanction or penalty, or any injunctive, equitable, legal, declaratory, administrative or other relief from or against, [Defendants], [their] direct or indirect distributors, affiliates, customers, or any other individual or entity arising from, by reason of, or in connection with making, using, selling, offering to sell or importing [Defendants'] Products which would, but for this Agreement, infringe any Wi-Lan Patents."

*Id*. at 4. Article IV is titled "Patents other than the Wi-Lan Patents" and reads:

> "[w]ith respect to patents other than the Wi-Lan Patents (to which Article III of this Agreement applies), . . . Wi-Lan hereby agrees that no damages shall accrue against [Defendants] . . . for infringement of any patents that, on or after the Effective Date, are owned or controlled by Wi-Lan where liability results from making, having made, importing, using, selling, offering to sell, or otherwise disposing of [Defendants'] UMTS/HSPA Products and damages shall only accrue for such making, having made, importing, using, selling, offering to sell or otherwise disposing of UMTS/HSPA Products beginning after such time as Wi-Lan commences an action against [Defendants] or its Affiliates relating to UMTS/HSPA Products and infringement of said Wi-Lan patents."

*Id*. at 5. Finally, Article VII is titled "Most-Favoured Licensee Provisions" and states:

> "[i]n the event that Wi-Lan owns or controls the licensing of patents not already addressed under this Agreement and which are infringed or alleged to be infringed by UMTS/HSPA Products, Wi-Lan hereby agrees that at any time during the term of this Agreement, at [Defendants'] request, Wi-Lan will grant to [Defendants] and its Affiliates a non-exclusive license to make, have made, use, sell, offer for sale, lease or otherwise dispose of, and import [Defendants'] products including UMTS/HSPA Products and Wi-Lan agrees to grant such a license at most-favored licensee status as compared to any future licensee of Wi-Lan."

*Id*. at 6.

On October 5, 2010, Wi-Lan filed suit against Defendants Ericsson and Sony alleging patent infringement by Defendants' HSPA-compliant products of U.S. Patent Nos. 6,088,326; 6,195,327; 6,222,819; and 6,381,211 (collectively, "patents-in-suit"). Dkt. No. 1. Wi-Lan acquired the patents-in-suit on April 29, 2009, after the effective date of the PCR Agreements, and there is no dispute that the patents-in-suit are not among the four identified PCR Patents. Dkt. No. 171 at 4.

Defendants allege that the PCR Agreements bar the current lawsuit and filed motions for summary judgment to enforce the PCR Agreements' covenant not to sue. Dkt. Nos. 172 and 181. Plaintiff also filed a motion for summary judgment regarding Defendants' affirmative defenses and counterclaims for breach of contract. Dkt. No. 171.

After the Parties completed briefing on the motions for summary judgment, Defendants filed a supplement[1] requesting, in the alternative, partial summary judgment that Wi-Lan breached the PCR Agreements by failing to provide a license to the patents-in-suit on terms consistent with the PCR Agreeements' most-favored licensee provision. Dkt. No. 276.

---

[1] On December 7, 2012, Defendants filed a motion seeking leave to supplement the existing summary judgment briefing. Dkt. No. 275. Plaintiffs originally opposed the motion. Dkt. No. 283. However, after the Court set the motion for hearing, Plaintiff withdrew its opposition (Dkt. No. 328) and the Court granted leave to supplement the briefing. The supplement to Defendants' Motions for summary judgment was deemed filed on February 26, 2013. Dkt. No. 340 at 2.

3

Defendants also filed a motion to strike extrinsic evidence that Wi-Lan referenced in its opposition to Defendants' supplemental summary-judgment briefing. Dkt. No. 352.

## APPLICABLE LAW

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323—325 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue for trial exists, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Under Article VIII, Section 10 of the contract at issue, the parties agreed that the PCR Agreements must be construed in accordance with the laws of the state of New York. Dkt. 171-1 at 12; Dkt. 171-2 at 13. Under New York law "[t]he proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." *Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*, 305 F.3d 82, 85 (2d Cir. 2002). "[T]he Court must look first to the parties' written agreement to determine the parties' intent and limit its inquiry to the words of the agreement itself if the agreement sets forth the parties intent clearly and unambiguously." *Russo v. Estee Lauder Corp.*, 856 F. Supp. 2d 437, 460 (E.D.N.Y. 2012). When the parties dispute the meaning of specific contract clauses, the Court must "determine whether such clauses are ambiguous when read in the context of the entire agreement." *Sayers v. Rochester Tel. Corp. Supp. Mgmt.*

*Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotations omitted). While Defendants and Plaintiff offer different interpretations of the Agreements, unambiguous contractual language does not become ambiguous simply because the parties to the litigation offer different interpretations. *Metropolitan Life Ins. Co. v. RJR Nabisco*, 906 F.2d 884, 889 (2nd Cir. 1990). The question of ambiguity is resolved by examining "the four corners of the document" and not through reference to extrinsic sources. *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009). However, in the case of an apparent ambiguity, "extrinsic evidence as to the parties' intent may properly be considered." *Id.* at 397.

## ANALYSIS

*Covenant not to Sue*

Defendants argue that the PCR Agreements prohibit lawsuits against all products that fall within the scope of the four PCR Patents, including the products accused in the present litigation. Dkt. No. 172 at 7. Defendants contend that in Article III of the PCR Agreements, Wi-Lan covenants not to commence or participate in any action against "products which would, but for th[e] Agreement[s], infringe any [PCR Patents]." *Id.* at 14. Defendants point to Wi-Lan's stipulation that "HSPA-compliant products infringe one or more of the PCR Patents." Dkt. No. 403. Therefore, Defendants argue that Article III bars suits against all Defendants' products that support HSPA. Dkt. No. 172 at 17–18. In the instant suit, Wi-Lan accuses HSPA-compliant products, and the patents-in-suit read on the HSPA standard. *Id.* at 18–19. Thus, Defendants argue that the current suit is barred under the PCR Agreements.

Defendants further contend that their reading of the PCR Agreements is consistent with the rest of the Agreements' provisions. *Id.* Defendants argue that HSPA-compliant products are only a subset of products that implement the UMTS standard. *Id.* at 16–17. According to

Defendants then, the PCR Agreements prohibit lawsuits against Defendants' products that support HSPA, and limit pre-suit damages for any future infringement suits against the broader class of Defendants' products that do not support HSPA but do comply with other UMTS requirements. *Id*. at 16–17.

Wi-Lan contends that the PCR Agreements' covenant not to sue only applies to the four PCR Patents. Dkt. No. 186 at 5. Wi-Lan argues that in Article IV, the PCR Agreements expressly contemplate lawsuits accusing HSPA-compliant products based on patents other than the PCR Patents. *Id*. at 8. Such lawsuits are limited to damages accruing from the date of commencement of the action. *Id*. Wi-Lan also argues that the patents-in-suit fall under Article IV's definition of "patents other than the [PCR Patents]," because they were acquired after execution of the PCR Agreements. *Id*. Thus, rather than prohibiting lawsuits such as the instant one, the PCR Agreements expressly permit them. *Id*. Further, Wi-Lan contends that Defendants' interpretation is improperly broad, as it would bar any action by Wi-Lan against Defendants, be it for patent infringement, warranty claims, fraud, or anything else, as long as an HSPA-compliant product is involved. Thus, Wi-Lan argues, Defedants' interpretation of the covenant not to sue is inconsistent with the rest of the PCR Agreements. Dkt. 171 at 11.

Defendants' interpretation contradicts the Parties' agreement. First, Defendants rely on Article III's provision barring suit against "[Defendants'] products which would, but for this Agreement, infringe any [PCR Patents]" to argue that all lawsuits against Defendants' HSPA-compliant products are prohibited. Dkt. No. 172 at 7. Yet, Defendants never concede that the accused products infringe the PCR Patents. *See* Dkt. No. 152, ¶¶22, 27, 38, 70–73; Dkt. No. 151, ¶¶ 22, 27, 38, 70–73.

Second, even if Defendants conceded that their accused products infringe the PCR Patents, Article IV specifically contemplates actions commenced by Wi-Lan against Defendants' UMTS/HSPA Products for infringement of patents, *other* than the PCR Patents. The Agreements define UMTS/HSPA Products as "any product complying with the 21-35 series of 3GPP agreed protocols . . . corresponding to the 21–35 series of 3GPP agreed protocols . . . including the ETSI TS-125 protocols." Dkt. No. 171-1 at 3. Notably, the ETSI TS-125 protocols listed as an example reads on the same series-25 protocol as the PCR Patents. Dkt. No. 190 at 2. Thus, while the Parties' definition of UMTS/HSPA products may include more than HSPA products, reading the Agreements to bar all lawsuits against any HSPA-compliant products would directly contradict the Parties' agreement.

When "read in the context of the entire agreement," it is clear that Article III does not bar all actions brought against Defendants' HSPA-compliant products. *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993). Instead, the PCR Agreements bar actions for infringement of the four specified PCR Patents, and contemplate actions for infringement of other patents, like the patents-in-suit, while limiting damages. Therefore, the current suit is not barred by the PCR Agreements and partial summary judgment in favor of Plaintiff is appropriate.

*Most-Favored Licensee Provision*

Defendants request, in the alternative, partial summary judgment that Wi-Lan breached the PCR Agreements by failing to comply with the most-favored licensee provision. Dkt No. 276. Defendants argue that if Article III only applies to the four PCR Patents, then under Article VIII, Wi-Lan must grant Defendants most-favored licensee status for other patents not addressed in the Agreements. *Id*. at 3. Defendants contend that when they attempted to invoke their rights

under this provision, however, Wi-Lan refused to provide licenses for the patents-in-suit at most-favored licensee status, in breach of the PCR Agreements. *Id.* at 1.

Wi-Lan responds that the most-favored licensee provision is only triggered by the assertion of "patents not already addressed under th[e] Agreement[s]" that Wi-Lan owned or controlled on the Agreements' effective date of November 1, 2007. Dkt. No. 345 at 3. Wi-Lan argues that the patents-in-suit were not owned or controlled by Wi-Lan until 2009, therefore the patents-in-suit are governed by Article IV, which specifically addresses patents acquired by Wi-Lan after the effective date. *Id.* at 14-15. Wi-Lan contends that as the most-favored licensee provision cannot be triggered by the assertion of the patents-in-suit, Wi-lan has not breached its obligations under the Agreements. *Id.* at 17.

By its own terms, the most-favored licensee provision in Article VII applies only "[i]n the event that Wi-Lan owns or controls the licensing of patents not already addressed under this Agreement and which are infringed or alleged to be infringed by UMTS/HSPA products." Dkt. No. 171-1 at 7. As stated above, Article IV of the PCR Agreements specifically address "patents other than the [PCR Patents] . . . that, on or after [November 1, 2007], are owned or controlled by Wi-Lan." *Id.* at 5. Wi-Lan acquired the patents-in-suit on April 29, 2009, thus they are explicitly addressed by Article IV. Since patents "already addressed under [the] Agreement[s]" do not fall under Article VII's most-favored licensee provision, Wi-Lan is not obligated to grant Defendants such a license to the patents-in-suit.

As there is no breach of the PCR Agreements, Defendants' Motions for Summary Judgment are **DENIED** and Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

*Motion to Strike Extrinsic Evidence*

The Parties agree that the PCR Agreements are unambiguous. Defendants argue that extrinsic evidence may not be considered to devise the Parties' intentions in drafting an unambiguous contract and move to strike Plaintiff's proffered extrinsic evidence. Dkt. No. 352 at 2. Wi-Lan counters that, despite the Parties' stipulations that the PCR Agreements are unambiguous, the question of ambiguity is a question of law for the Court to determine. Dkt. No. 377 at 2. Wi-Lan also contends that the extrinsic evidence will be useful if the Court decides the PCR Agreements are, in fact, ambiguous. *Id*.

Extrinsic evidence may not be considered in the interpretation of an agreement that is undisputedly unambiguous. *Chimart Associates v. Paul*, 66 N.Y.2d 570, 572, 498 N.Y.S.2d 344, 489 N.E.2d 231 (N.Y. 1986); *TI v. Hyundai Elec. Indus., Co.*, 42 F. Supp. 2d 660, 673 (E.D. Tex. 1999). As the Parties note, the PCR Agreements are fully integrated and unambiguous. Accordingly, extrinsic evidence may not be considered and Defendants' Motion to Strike Extrinsic Evidence is **GRANTED**.

## CONCLUSION

For the above-mentioned reasons, the Court hereby **GRANTS** Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 171) and **DENIES** the Ericsson Defendants' Motion for Summary Judgment (Dkt No. 172) and the Sony Mobile Defendants' Cross-Motion for Summary Judgment (Dkt No. 181). The Court also **GRANTS** the Ericsson and Sony Mobile Defendants' Motion to Strike Extrinsic Evidence (Dkt No. 352).

So ORDERED and SIGNED this 4th day of June, 2013.



_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**