IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| WI-LAN INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | CASE NO. 6:10-CV-521 |
| ALCATEL-LUCENT USA INC., | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| WI-LAN INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. 6:13-CV-252 |
| vs. | § | |
| | § | |
| HTC CORPORATION, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Alcatel-Lucent, HTC, and Sony Mobile's Daubert Motion to Exclude the Report and Testimony of John C. Jarosz Regarding Issues Related to Damages (Docket No. 337). The Court heard arguments regarding the motion at the June 25, 2013 pretrial hearing. Having considered the Parties' written submissions and oral arguments, the Court **GRANTS** the Motion **IN PART**.

**BACKGROUND**

On October 5, 2010, Wi-Lan Inc. ("Wi-Lan") brought suit against Alcatel-Lucent USA Inc. ("Alcatel-Lucent"); Telefonaktiebolaget LM Ericsson and Ericsson Inc. ("Ericsson"); Sony Mobile Communications AB and Sony Mobile Communications (USA) Inc. ("Sony Mobile");

and HTC Corporation, HTC America, Inc., and Exedea Inc. ("HTC") alleging infringement of U.S. Patent Nos. 6,381,211 ("the '211 Patent"), 6,088,326 ("the '326 Patent"), 6,195,327 ("the '327 Patent"), and 6,222,819 ("the '819 Patent"). Wi-Lan accuses base stations manufactured by Alcatel-Lucent and Ericsson, and mobile handsets made by Sony Mobile and HTC. To establish Wi-Lan's damages attributable to Defendants' alleged infringement, Wi-Lan intends to call Mr. John C. Jarosz as a witness at trial. In his report, Mr. Jarosz calculates Wi-Lan's damages stemming from Defendants' alleged infringement as a lump-sum royalty based on a hypothetical negotiation.

In the instant motion, Defendants Alcatel-Lucent, HTC, and Sony Mobile (collectively "Defendants") move to exclude Mr. Jarosz's expert opinions as unreliable. Wi-Lan opposes this motion, arguing that Mr. Jarosz's calculations are reliable and should not be excluded.

## APPLICABLE LAW

Federal Rule of Evidence 702 allows a witness "qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion or otherwise if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

As a preliminary matter, district courts are asked to act as gatekeepers and exclude expert testimony from trial that is irrelevant or unreliable. FED. R. EVID. 104(a); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (discussing *Daubert v. Merrell Dow Pharm.* 509 U.S. 579, 593–94 (1993)). "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.' Relevance depends upon 'whether [that] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93).

Courts will consider a nonexclusive list of factors to determine whether scientific expert testimony is reliable. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 593–94 (1993). These factors include: (1) whether others can or have objectively tested the expert's technique or theory; (2) whether the technique or theory has been subject of peer review and publication; (3) the known or potential error rate of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the scientific community has generally accepted the technique or theory. FED. R. EVID. 702 (advisory committee notes, 2000 amendments); *Daubert*, 509 U.S. at 593–94.

However, the district courts are not "intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996); FED. R. EVID. 702 (advisory committee notes, 2000 amendments). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Daubert*, 509 U.S. at 595. Accordingly, if a party offering expert testimony can prove by a preponderance of the evidence that the expert is qualified, the expert's testimony is relevant, and the testimony is reliable, a court should not exclude it. *Id.* at 590–91.

## ANALYSIS

Defendants attack Mr. Jarosz's report and testimony on several grounds, arguing that Mr. Jarosz: violates the Entire Market Value Rule by using the overall end-product revenue in his royalty base; conflates the value of the patented technology with the value of the HSPA standard; and impermissibly includes pre-suit damages. Docket No. 337 at 1–2. Wi-Lan responds that Mr. Jarosz arrives at a lump-sum royalty after properly considering: existing license agreements involving the patents-in-suit between Wi-Lan and third parties; the benefits to the Defendants

associated with use of the technology at issue; the lack of availability of acceptable non-infringing alternatives; and the *Georgia-Pacific* factors. Docket No. 348 at 1, 3.

First, Defendants contend Mr. Jarosz impermissibly uses the entire market value in his calculation of a reasonable royalty, since he considers the entire revenue from the accused products without demonstrating that the patented technology drives demand for the entire end product. Docket No. 337 at 5–10. Defendants cite to Mr. Jarosz's deposition, wherein he admits that other features also contribute to the demand for the accused products. Docket No. 337, Exhibit 3 at 144:24–145:6, 205:21–207:16. Defendants contend that the smallest saleable patent-practicing unit is an optional software upgrade for base stations and a portion of a chipset for handsets. Docket No. 337 at 5. Thus, because Mr. Jarosz's calculations do not restrict his royalty base to the smallest saleable patent-practicing unit, Defendants argue that his calculations run afoul of established Federal Circuit law regarding the Entire Market Value Rule. *Id.*

Wi-Lan responds that Mr. Jarosz does not run afoul of the Entire Market Value Rule by analyzing existing licenses involving the patents-in-suit, some of which designate lump-sum payments and others running royalties, with some royalties calculated as a percentage of revenue and others as a fixed dollar amount per unit. *Id.* at 3. Plaintiff argues that Mr. Jarosz calculates a lump-sum royalty, not a running royalty multiplied by a royalty base. *Id.* at 4. So, the Entire Market Value Rule is not implicated. *Id.* Further, Wi-Lan contends that Mr. Jarosz adjusts for economic differences between licensees and Defendants by considering the market size of the licensee relative to the market size of each Defendant, as well as the level of revenue at issue. *Id.* at 3. Wi-Lan also points out that Defendants Ericsson and Sony Mobile's own damages expert, Dr. Becker, evaluates many of the same licenses evaluated by Mr. Jarosz, applies a running royalty rate to revenues of Ericsson's accused base stations, and arrives at a lump-sum royalty

payment. *Id*. at 10. Similarly, Defendants Alcatel-Lucent and HTC's damages expert, Mr. Bakewell, considers total Defendant revenues in the hypothetical negotiation to arrive to a lump-sum figure. *Id*. at 11. Thus, Wi-Lan argues that Mr. Jarosz's testimony should not be excluded. *Id*.

Second, Defendants contend that Mr. Jarosz conflates the value of the patented technology with the value of the HSPA wireless standard, by looking at the amount of profits Defendants would lose from lost sales of non-standard-compliant products. *Id*. at 10–11. Defendants point out that the patents-in-suit relate only to a portion of the HSDPA feature set, which is only a segment of the HSPA standard. *Id.* Defendants argue that the standard has value apart from the patents that are essential to practicing it. *Id*. Thus, by valuing compliance with the standard, Mr. Jarosz overvalues the patents-in-suit. *Id*. at 12. Wi-Lan responds that Mr. Jarosz does not improperly overvalue the patented technology, because Mr. Jarosz never concludes that a reasonable royalty is equal to the value of the profits Defendants stood to lose from sales of standard-compliant products. *Id*. at 13. Instead, Mr. Jarosz analyzes the footprint of the patents-in-suit at the date of the hypothetical negotiation. *Id*. at 14.

The patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). Mr. Jarosz offers royalty calculations based on existing license agreements involving the patents-in-suit between Wi-Lan and third parties, with some licenses providing for lump-sum payments and others for running royalties.

In his calculations involving licenses that provide for running royalties, Defendants complain that Mr. Jarosz violates the Entire Market Value Rule by impermissibly including the

revenue for the entire base station in his royalty base. Mr. Jarosz does not tie the calculation of damages owed by Alcatel-Lucent[1] to the smallest saleable patent-practicing unit. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product. Thus, it is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'"). Mr. Jarosz includes the revenue of the entire base station without offering evidence that the patented feature drives the demand for the entire multi-component product. *Id.* Further, Mr. Jarosz recognizes in his report that to implement the accused HSPA functionality, Alcatel-Lucent's base stations only require an optional software upgrade and a compatible modem card. Docket No. 337, Exhibit 4 at 8–9. To the extent that Mr. Jarosz's analysis relies on calculations involving the value of the entire base station, instead of the smallest saleable patent-practicing unit, to arrive at the lump-sum damages amount, it is a violation of the Entire Market Value Rule. *See LaserDynamics, Inc*, 694 F.3d at 67–68; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

Defendants also argue that Mr. Jarosz's calculations involving lump-sum license agreements violate the Entire Market Value Rule because he performs market share calculations to determine a lump-sum royalty applicable to Defendants. Damages calculated from a per-unit royalty based on the value of the patent, irrespective of the value of the end product, do not violate the Entire Market Value Rule. *See SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365,

---

[1] Ericsson also manufactures base stations. However, Ericsson does not join the current Daubert Motion and did not present argument on whether Mr. Jarosz calculations were limited to the smallest saleable patent-practicing unit. Ericsson also did not produce sales data separating sales of products or components that do not support the HSPA standard.

1383 (Fed. Cir. 2013) (determining that a plaintiff did not invoke the entire market value rule when it "never sought to justify its damages figure based on the price of the customer end products"); *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 833 (E.D. Tex. 2012) (Davis J.). However, the license agreements Mr. Jarosz analyzes offer differing terms, with most of them being worldwide portfolio licenses that include many more patents than the patents-in-suit. Docket No. 348, Exhibit 1 at 58–70. Mr. Jarosz calculates the market size of the licensee relative to the market size of the Defendant, as well as the level of revenue at issue, to assign a royalty rate. *Id.* However, Mr. Jarosz does no apportionment to account for the differences between the worldwide portfolio licenses and a license to the patents-in-suit for U.S. sales of Defendants' accused products.

While Mr. Jarosz states that he takes all the evidence into consideration in arriving to a final lump-sum royalty, "a reasonable royalty analysis . . . must carefully tie proof of damages to the claimed invention's footprint in the market place." *LaserDynamics*, 694 F.3d at 67. Therefore, Mr. Jarosz's consideration of all the evidence is a poor substitute for the required analysis that parses an alleged infringer's profits for patented versus unpatented features. *See* 35 U.S.C. § 284 ("[T]he court shall award the claimant damages adequate to compensate for infringement . . . for the use made of the invention by infringer.").

Accordingly, the Court **GRANTS IN PART** Defendants' Motion. If Wi-Lan intends to rely upon Mr. Jarosz's reasonable royalty analysis at trial, Mr. Jarosz must amend his report and recalculate his reasonable royalty in light of the Court's ruling.

The Parties also dispute whether pre-suit damages for products sold by Alcaltel-Lucent and HTC should be included in Mr. Jarosz's analysis. Defendants contend that Mr. Jarosz impermisibly includes pre-suit damages in his royalty opinion without any evidence that Wi-Lan

7

Case 6:10-cv-00521-LED Document 421 Filed 06/28/13 Page 8 of 9 PageID #: 12883

complied with the marking statute or that it gave Defendants actual notice of their alleged infringement. *Id*. at 13. Wi-Lan disputes that it was required but failed to comply with the marking statute. However, Wi-lan states that if the Court disagrees, Mr. Jarosz's analysis can be adjusted to reflect alternative start dates. *Id*. at 15.

Wi-Lan bears the burden of proving that it complied with 35 U.S.C. § 287 (the "marking statute"), or that it gave Defendants actual notice of their alleged infringement of the patents-in-suit, to be able to recover pre-suit damages. *See K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, 52 F. App'x. 135, 141 (Fed. Cir. 2002). As Defendants have not moved for Summary Judgment that Wi-Lan failed to comply with the marking statute, the issue is not yet before the Court. However, it would be advisable for Mr. Jarosz to provide an alternate calculation in case Plaintiff fails to meet its burden regarding notice.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS IN PART** the Motion to Exclude the Report and Testimony of John C. Jarosz Regarding Issues Related to Damages (Docket No. 337). If Wi-Lan wishes to present Mr. Jarosz's reasonable royalty analysis at trial, Mr. Jarosz must amend his report by Wednesday, July 3, 2013 at 12:00 P.M. If Mr. Jarosz does amend his report, Defendants may depose Mr. Jarosz by Friday, July 5, 2013. Defendants are also granted leave to file a supplemental expert report to respond to Mr. Jarosz' amended report by 5:00 P.M. on Friday, July 5, 2013. Plaintiff may conduct a deposition relating to Defendants' supplemental expert report by 5:00 P.M. on Saturday, July 6, 2013.

**So ORDERED and SIGNED this 28th day of June, 2013.**

**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**