**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| WI-LAN INC., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:10-cv-521-LED |
| | § | Civil Action No. 6:13-cv-252-LED |
| v. | § | CASES CONSOLIDATED FOR |
| | § | TRIAL |
| ALCATEL-LUCENT USA INC.; *et al.*, | § | |
| | § | JURY TRIAL DEMANDED |
| Defendants. | § | |
| | § | |

## WI-LAN INC.'S MOTION FOR A NEW TRIAL CONCERNING THE NON-INFRINGEMENT OF CERTAIN CLAIMS OF U.S. PATENT NOS. 6,088,326; 6,222,819; 6,195,327 AND 6,381,211

**Table of Contents**

LEGAL STANDARD.................................................................................................................... 1

ARGUMENT ................................................................................................................................ 2

    I.    Defendants' Arguments Invited The Jury To Completely Disregard The Full Scope Of
The Asserted Claims of the '326, '819 and '211 Patents ........................................................... 2

        A.    The asserted claims of the '326, '819 and '211 Patents do not require a "separate"
overlay code ................................................................................................................................. 2

        B.    Claim 5 of the '326 Patent and claim 11 of the '819 Patent do not exclude orthogonal
codes generated on-the-fly ......................................................................................................... 6

        C.    Defendants' improper arguments requiring a "separate" code confused the jury and
warrant a new trial ...................................................................................................................... 7

    II.    Defendants' Arguments Excluded The Preferred Embodiment From The Scope Of The
Asserted Claims of The '326 Patent In An Effort To Confuse The Jury.................................... 8

    III.    Defendants Intentionally Obfuscated The Plain Language Of The Claims And Grafted
Extraneous Limitations Into Claim 11 Of The '327 Patent ...................................................... 10

    IV.    A New Trial Is Also Warranted On Damages And On Validity................................... 11

CONCLUSION........................................................................................................................... 12

## Table of Authorities

**Cases**

*Johnson v. Offshore Express, Inc.*,
  845 F.2d 1347 (5th Cir. 1988) ............................................................................. 3, 7

*Linear Technology Corp. v. International Trade Commission*,
  566 F.3d 1049 (Fed. Cir. 2009) .............................................................................. 6

*Nissho–Iwai Co., Ltd. v. Occidental Crude Sales*,
  729 F.2d 1530 (5th Cir.1984) ................................................................ 2, 7, 10, 11

*Shows v. Jamison Bedding, Inc.*,
  671 F.2d 927 (5th Cir. 1982) .................................................................................. 2

*Smith v. Trans World Drilling Co.*,
  773 F.2d 610 (5th Cir. 1985) .................................................................................. 1

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) .............................................................................. 10

*Whitehead v. Food Max of Miss., Inc.*,
  163 F.3d 265 (5th Cir. 1984) .................................................................................. 2

**Rules**

Fed. R. Civ. P. 59(a)(1) ............................................................................................ 1

Fed. R. Civ. P. 60(b) ................................................................................................ 2

Plaintiff Wi-LAN Inc. ("Wi-LAN") requests a new trial on infringement of all asserted claims, as well as validity of the asserted claims of the '326, '819 and '211 Patents.[1] Wi-LAN makes this request because the verdict is the result of the jury's confusion regarding the interpretation of the asserted claims caused by Defendants' trial strategy—in which Defendants' counsel and expert witnesses repeatedly distorted the Court's claim constructions and misdirected the jury with incorrect legal argument.

Defendants' mischaracterization of the Court's claim constructions coupled with Defendants' repeated demonization of Wi-LAN's licensing model thoroughly confused the jury as to the specific fact issues being tried and generated an immense prejudice against Wi-LAN. Because of Defendants' campaign of creating confusion and prejudice in the jurors' minds, the trial in this case accomplished little more than to adjudicate infringement under a distorted claim interpretation that was wholly unsupported by the Court's *Markman* Order or Federal Circuit precedent.  Wi-LAN seeks a new trial in order to obtain a balanced and fair trial on the merits where both sides engage on relevant factual issues employing the Court's actual claim constructions.

**LEGAL STANDARD**

"The court may, on motion, grant a new trial on all or some of the issues[.]" FED. R. CIV. P. 59(a)(1). The trial court's power to grant a new trial has "long been regarded as an integral part of trial by jury." *See Smith v. Trans World Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). "[I]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial." *Id.* In deciding to grant a new trial, the Court "need not take the view of the evidence most favorable to the verdict winner . . . but may

---

[1] Wi-LAN concurrently renews its Motion for Judgment As A Matter of Law as to the validity of the asserted claims of the '326, '819 and '211 Patents. In addition, as explained in Section IV below, Wi-LAN requests a new trial on damages as well.

1

weigh the evidence." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 270 (5th Cir. 1984).

"A trial judge may order a new trial if he suspects that the jury verdict reflects confusion."

*Nissho–Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530, 1538 (5th Cir.1984). The Fifth

Circuit considers three factors—simplicity of the issues, the extent to which the evidence is in

dispute, and the absence of any pernicious or undesirable occurrence at trial—as factors that

weigh against granting a new trial. *See Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930-931

(5th Cir. 1982). "When one or more of these factors are absent, however, [the Fifth Circuit] will

affirm a new trial order even if on our own review of the 'cold record' we are not convinced that

the jury verdict was against the great weight of the evidence." *See id.*

Moreover, a court may grant a motion for new trial under Rule 60(b) on the basis of

"fraud, . . . misrepresentation, or misconduct by an opposing party[.]" *See* FED. R. CIV. P. 60(b).

Granting a motion under Rule 60(b) is within the discretion of the trial court, and because this

rule "is remedial in nature it should be liberally construed." *Johnson v. Offshore Express, Inc.*,

845 F.2d 1347, 1358 (5th Cir. 1988).

## ARGUMENT

### I. DEFENDANTS' ARGUMENTS INVITED THE JURY TO COMPLETELY DISREGARD THE FULL SCOPE OF THE ASSERTED CLAIMS OF THE '326, '819 AND '211 PATENTS

#### A. The asserted claims of the '326, '819 and '211 Patents do not require a "separate" overlay code

Defendants' presentation on non-infringement of the '326, '819 and '211 Patents

centered on the argument that neither the HSDPA standard nor the accused products generated a

"separate" overlay code or "two sets of codes."  *See* Trial Transcript 116:12-13 (July 9, 2013

Morning Session) (cited portions attached as Exhibit A).  Indeed, Dr. Wicker testified that the

basis of his opinion was that the overlay code had to be a "separate" code from the orthogonal

code. *See* Trial Transcript 117:8-16 (July 11, 2013 Morning Session) (cited portions attached as

2

Exhibit B).   In doing so, Defendants' experts grafted a variety of limitations on the asserted claims:

- *See* Ex. B, Trial Transcript 117:8-16 (July 11, 2013 Morning Session) (Dr. Wicker arguing, without any basis in the claims or the Court's constructions, that the asserted claims of the '326, '819 and '211 Patents required the overlay code to be "a separate sequence" and a "separate code")

- *See* Ex. B, Trial Transcript 82:4-6 (July 11, 2013 Morning Session) (Dr. Wicker arguing, without any basis in the claims or the Court's constructions, that the asserted claims of the '326, '819 and '211 Patents required the overlay code to be "separate" from the orthogonal code)

- *See* Ex. B, Trial Transcript 30:14-18 (July 11, 2013 Morning Session) (Dr. Wicker arguing, without any basis in the claims or the Court's constructions, that the asserted claims of the '326, '819 and '211 Patents required that overlay code had to be a completely separate sequence without any overlap with the orthogonal code)

- *See* Ex. B, Trial Transcript 80:8-13 (July 11, 2013 Morning Session) (Dr. Wicker arguing, without any basis in the claims or the Court's constructions, that the asserted claims of the '326, '819 and '211 Patents excluded one code that encompassed both overlay and orthogonal codes)

- *See* Ex. B, Trial Transcript 161:17-23 (July 11, 2013 Morning Session) (Dr. Olivier arguing, without any basis in the claims or the Court's constructions, that the asserted claims of the '326, '819 and '211 Patents required the overlay code to be a "separate code")

3

- *See* Trial Transcript 20:15-20 (July 11, 2013 Afternoon Session) (cited portions attached as Exhibit C) (Dr. Akl arguing, without any basis in the claims or the Court's constructions, that the asserted claims of the '211 Patents required "two independent codes")

Wi-LAN raised its objection to Defendants' non-infringement theory during Defendants' cross-examination of Dr. Wells.  *See* Ex. A, Trial Transcript 100:24-101:17 (July 9, 2013 Morning Session); *see also id.* at 115:24-116:18.   And, in light of the Court's ruling on Wi-LAN's objection, Wi-LAN resorted to fleshing out the baseless nature of Defendants' non-infringement theory during cross-examination of Defendants' expert witnesses.  *See generally* Ex. B, Trial Transcript 80:1-13, 81:15-82:6, 161:17-162:3 (July 11, 2013 Morning Session). However, by then, Defendants' mischaracterization of the Court's claim constructions had already been implanted in the jury's mind and, despite Wi-LAN's efforts during cross-examination, that bell could not be un-rung.

None of these arguments served any legitimate purpose other than to thoroughly confuse the jury into thinking that the claims required the overlay code to be a "separate" code or an "independent" code. *See* Ex. B, Ex. C. Nonetheless, Defendants' experts testified that the jury should find non-infringement because the accused products do not have an overlay code "separate" from the orthogonal code. *See id.* In so doing, however, Defendants' experts improperly shoehorned a new limitation into the claims that did not exist.

Neither the intrinsic record nor the Court's *Markman* Order require the overlay codes to be separate from the orthogonal codes. In fact, during the *Markman* hearing, Defendants requested the Court to insert the word "separate" into the construction for "overlay code." *See* Dkt. No. 201 at 58 ("… I think a better construction, quite frankly, is: A second code separate

4

from the orthogonal code that subdivides an orthogonal channel."); *see id.* at 61 ("… the fact that these are two separate codes is important.") The Court, however, declined to insert such a limitation requiring overlay codes be a "separate" code. *See* Dkt. 200 at 13-14. Despite the Court expressly rejecting Defendants' position, Defendants nonetheless brought this argument through the back door by stating that the word "additional" in the Court's construction of "overlay code" meant a "separate" code. *See* Ex. B, Trial Transcript 117:8-16 (July 11, 2013 Morning Session). This testimony finds no basis in the Court's construction. Had the Court construed the "overlay code" to be a "separate" code, the *Markman* order would have so reflected. But the Court did not include the word "separate" in its construction, despite Defendants' request to import such a limitation during the *Markman* hearing. Defendants' experts successfully confused the jury by making an end-run around the Court's constructions and importing extraneous limitations into the claims.

Lastly, contrary to Defendants' argument at trial, Federal Circuit precedent dictates that two elements of a claim are not required to be completely separate from each other in the absence of any such requirement in the intrinsic record. *See Linear Technology Corp. v. International Trade Commission*, 566 F.3d 1049, 1054-56 (Fed. Cir. 2009) ("[w]e agree with the Commission's construction of 'second circuit' and 'third circuit,' defining the terms broadly to not require entirely separate and distinct circuits.") Similarly here, there is absolutely nothing in the intrinsic record that mandates "overlay codes" to be separate from the "orthogonal codes." Defendants' trial theme was in clear violation of established Federal Circuit precedent, and thus, further mandates a new trial on the merits.[2]

---

[2] Defendants' arguments with respect to the "second encoder" and "overlay code generator" elements of the asserted claims of the '326 and '819 Patents, and "second decoder" and "overlay code generator" elements of the '211 Patents were predicated solely on their theory that the

### B.   Claim 5 of the '326 Patent and claim 11 of the '819 Patent do not exclude orthogonal codes generated on-the-fly

The specification of the '326 and '819 Patents describe two techniques for generating orthogonal codes. One of these techniques is to generate the orthogonal codes "on-the-fly." *See* U.S. Patent No. 6,088,326 col. 3 ll. 31-33 (attached as Exhibit E). Another is to store the orthogonal codes in storage and retrieve the codes as required. *Id.* at col. 3 ll. 33-37. Neither the claim language nor the intrinsic record requires these two techniques to be mutually exclusive such that the presence of one necessarily reflects the absence of another. Nonetheless, during his testimony, Dr. Wicker added a negative limitation to the claims requiring these techniques to be mutually exclusive. *See* Ex. B, Trial Transcript 42:11-43:4 (July 11, 2013 Morning Session); *see also id.* at 43:5 ("So it's one or the other…"). Dr. Wicker improperly shoehorned this limitation into claim 5 of the '326 Patent and claim 11 of the '819 Patent by testifying that the claim excluded any implementation that generated orthogonal codes "on-the-fly." *See id.* at 43:5-20. Dr. Olivier provided no explanation, other than to simply agree with Dr. Wicker with respect to the "storage element." *See id.* at 149:20-22.

Though there is no dispute that claim 5 of the '326 Patent and claim 11 of the '819 Patent require orthogonal codes to be stored in a storage, Defendants' argument at trial went a step

---

asserted claims required the "overlay codes" to be "separate" from the "orthogonal codes." *See* Trial Transcript 179:25-180:2 (July 10, 2013 Afternoon Session) (cited portions attached as Exhibit D) (Dr. Wicker testifying that "[f]urthermore, there was no second encoder. Without any overlay codes, there's no encoder to encode them."); *see also* Ex. B, Trial Transcript 33:18-34:2 (July 11, 2013 Morning Session); *see id.* at 149:6-10 (Dr. Olivier testifying that "[t]here's also – because there's no overlay code, there's no overlay code generator … And since there's no overlay code, you don't have a second encoder for applying the overlay code."); Ex. C, Trial Transcript 25:16-18 (July 11, 2013 Afternoon Session) (Dr. Akl testifying that "[s]o it makes sense, if there is no overlay code and no overlay code generator, there would be no second decoder."). Therefore, Defendants' arguments relating to the "second encoder," "second decoder" and "overlay code generator" elements were improper for exactly the same reasons as their arguments relating to the "overlay code" element.

further. Neither Dr. Wicker nor Dr. Olivier provided any evidence as to why it would be appropriate to import a negative limitation into these claims.[3]

### C. Defendants' improper arguments requiring a "separate" code confused the jury and warrant a new trial

This Court has full discretion to order a new trial if it "suspects that the jury verdict reflects confusion." *Nissho-Iwai Co. Ltd. v. Occidental Crude Sales,* 729 F.2d 1530 at 1538 (5th Cir. 1984). Indeed, the Court has authority under Rule 60(b) to order a new trial on the basis of "misrepresentation, or misconduct by an opposing party." *Johnson v. Offshore Express Inc.*, 845 F.2d 1347 at 1358 (5th Cir. 1988).

Defendants' arguments requiring a "separate" code did exactly that—they misrepresented the Court's construction of "overlay code."   Defendants severely distorted the Court's construction for the term "overlay code" and inserted extraneous limitations.   *See* Ex. B, Trial Transcript 82:4-6 (July 11, 2013 Morning Session) ("I do agree that it has to be separate. Yes"). This, despite the fact that the Court, during the *Markman* hearing, squarely rejected Defendants' attempt to import the same extraneous limitation requiring the overlay codes to be "separate." *See* Dkt. No. 201 at 58 ("… I think a better construction, quite frankly, is: A second code separate from the orthogonal code that subdivides an orthogonal channel."); *id.* at 61 ("… the fact that these are two separate codes is important."). The Court, however, declined to insert such a limitation requiring overlay codes be a "separate" code. *See* Dkt. 200 at 13-14.   Defendants' importation of a negative limitation into claim 5 of the '326 Patent and claim 11 of the '819 Patent, as described in Section I.B above similarly misdirected the jury. *See* Ex. B, Trial Transcript 42:11-43:4 (July 11, 2013 Morning Session); *see id.* at 43:5-20; *id.* at 149:20-22. These arguments served no purpose other than to confuse the jury.  This Court should, therefore,

---

[3] Dr. Akl did not address this issue in his trial testimony.

order a new trial in light of Defendants' misrepresentation and distortion of the Court's claim constructions.

**II.   DEFENDANTS' ARGUMENTS EXCLUDED THE PREFERRED EMBODIMENT FROM THE SCOPE OF THE ASSERTED CLAIMS OF THE '326 PATENT IN AN EFFORT TO CONFUSE THE JURY**

Dr. Wicker testified that neither the HSDPA standard nor the accused products infringed the asserted claims of the '326 Patent because they did not have a "second encoder, selectively operable instead of the TDM encoder." *See* Trial Transcript 200:11-24 (July 10, 2013 Afternoon Session) (cited portions attached as Exhibit D). In an attempt to prove non-infringement, Dr. Wicker completely distorted the claim language and interpreted "selectively operable" to mean that a single frequency channel is either divided using overlay codes, or divided using TDM techniques, but both cannot be used at the same time. *See id.* at 201:3-4 ("… you use one or you use the other, *but not both*" (emphasis added)); *id.* at 202:19-20 ("At any one time, *you only get one of the solutions*." (emphasis added)). Dr. Wicker's impromptu (and previously undisclosed) opinion on claim interpretation completely disregarded the preferred embodiment disclosed in Figure 15A of the '326 Patent illustrating the same single frequency channel being selectively divided using overlay codes and TDM techniques, at the same time. *See* Ex. E, U.S. Patent No. 6,088,326 Fig. 15A. In fact, Dr. Wicker's testimony clearly indicated to the jury that Figure 15A was not within the scope of the claims. *See* Ex. B, Trial Transcript 97:5-7 (July 11, 2013 Morning Session) ("The selective operability *in the claim language, as opposed to this figure*, says that we have a choice." (emphasis added)).[4]

The specification of the '326 Patent explains that the same single frequency channel can have RW codes that are divided using TDM techniques (*e.g.*, RW5 to RW11 in Fig 15A) and, at

---

[4] Dr. Olivier adopted Dr. Wicker's testimony with respect to the "selectively operable" claim element. *See* Ex. B, Trial Transcript 149:11-19 (July 11, 2013 Morning Session). Dr. Akl did not address this issue in his trial testimony.

the same time, have RW codes that are divided using overlay codes (*e.g.*, RW14 and RW15 in Fig. 15A). *See* Ex. E, U.S. Patent No. 6,088,326 col. 19 ll. 1-4 ("As illustrated by ***RW5 to RW11, TDM*** can be used on the downlink traffic channels to enable more than one CT to ST communication to take place on the same RW channel during each frame." (emphasis added)); *id.* at col. 19 ll. 12-17 ("It should be noted that, in both FIGS. 15A and 15B, the channels ***RW14 and RW15*** are reserved as a call control channel and an link acquisition channel, respectively, and ***overlay codes are employed on these channels***, irrespective of whether the path is a downlink or an uplink path." (emphases added)).

By testifying that the claims require the overlay codes and TDM techniques cannot be applied to the same single frequency channel, Dr. Wicker and Dr. Olivier improperly excluded a preferred embodiment from the scope of the claims. Moreover, neither Dr. Wicker nor Dr. Olivier provided any evidentiary support for their claim construction excluding a preferred embodiment from the asserted claims.  Indeed, it is well established that an interpretation of a claim that excludes a preferred embodiment is "rarely, if ever, correct." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 at 1583 (Fed. Cir. 1996) ("… a preferred (and indeed only) embodiment in the specification would not fall within the scope of the patent claim. Such an interpretation is rarely, if ever, correct and would require highly persuasive evidentiary support….").

Dr. Wicker's and Dr. Olivier's testimony successfully confused the jury into believing that the scope of the claims was much narrower than the claims as construed by the Court. This argument served no purpose other than to conflate the issues for the jury and this Court has full discretion to order a new trial because "the jury verdict reflects confusion." *Nissho-Iwai Co. Ltd. v. Occidental Crude Sales,* 729 F.2d 1530 at 1538 (5th Cir. 1984).

9

### III.   DEFENDANTS INTENTIONALLY OBFUSCATED THE PLAIN LANGUAGE OF THE CLAIMS AND GRAFTED EXTRANEOUS LIMITATIONS INTO CLAIM 11 OF THE '327 PATENT

In addition to severely distorting the claim elements of the overlay patents (*i.e.,* the '326, '819 and '211 Patents), Defendants read in extraneous limitations into claim 11 of the '327 Patent in arguing non-infringement. Despite the fact that the claim only requires the "parameter" to be "indicative of" intercell interference, Dr. Wicker testified that the parameter must "only measure the interference from other cells." *See* Ex. B, Trial Transcript 84:22-25 (July 11, 2013 Morning Session).[5]

Dr. Wicker also read in yet another limitation into claim 11 of the '327 Patent when he testified that neither the HSDPA standard nor the accused products infringed claim 11 because they didn't "lock" the channels due to intercell interference. *See id.* at 55:12-13 ("We're locking them out from all users, not simply reassigning them"); *see also id.* at 70:13-16 ("There is no situation in which one of those channels is locked out, taken out of use because of interference from other cells."). However, nothing in claim 11 of the '327 Patent requires the channels to be "locked" or "locked out" as Dr. Wicker testified. In fact, Dr. Wicker imported a limitation from a different, unrelated, and non-asserted claim (claim 5 of the '327 Patent) that requires designating "one or more of said traffic channels as locked channels" into claim 11 of the '327 Patent. *See* U.S. Patent No. 6,195,327 cl. 5 (attached as Exhibit F).

None of these arguments served any legitimate purpose, and in making these arguments, Defendants confused the jury on what was required by the claims. This Court has full discretion

---

[5] Dr. Olivier provided no additional explanation, other than to simply agree with Dr. Wicker's opinions and provide conclusory statements. *See* Ex. B, Trial Transcript 138:21-139:7 (July 11, 2013 Morning Session); *id.* at 140:23-141:1; *id.* at 154:3-5. Dr. Akl provided no testimony on this issue.

to order a new trial if it "suspects that the jury verdict reflects confusion." *Nissho-Iwai Co. Ltd. v. Occidental Crude Sales,* 729 F.2d 1530 at 1538 (5th Cir. 1984).

## IV.    A NEW TRIAL IS ALSO WARRANTED ON DAMAGES AND ON VALIDITY[6]

That the jury was thoroughly confused by Defendants' trial strategy is further reflected in the verdict form where the jury answered the damages issue, finding zero damages, despite finding non-infringement and invalidity. *See*  Dkt. No. 465 at 4. Given the jury's finding on non-infringement and invalidity, and the explicit instructions on the Verdict Form, the jury had no reason to respond to Question 4.  *Id.* Indeed, Question 4 of the Verdict Form requests damages only for those claims that the jury has "found infringed and not invalid." *See id.*.

However, because a new trial is warranted on infringement, and because judgment should be rendered for Wi-LAN on the validity of the asserted claims (for the reasons stated in Wi-LAN's Renewed Motion for Judgment As A Matter Of Law Of No Invalidity),[7] Wi-LAN believes that it is entitled to a new trial not only on infringement but on damages as well. Indeed, if the claims are found infringed, Wi-LAN is entitled to no less than a reasonable royalty for Defendants' infringement of the asserted claims.  *See* 35 U.S.C. §284.  There was sufficient evidence of a reasonable royalty damage amount adduced at trial, including the expert opinions of Mr. Jarosz, or alternatively the expert damages opinions of Defendants' own experts.  *See* Ex. C, Trial Transcript 54:11-25 (July 11, 2013 Afternoon Session); *id.* at 153:7-154:2.  Therefore, if the claims are found infringed, Wi-LAN is entitled to a new trial where the jury can determine the appropriate reasonable royalty, which is not currently reflected in the jury's verdict.

---

[6] In the event Wi-LAN's Renewed Motion for JMOL on Validity is not granted, a new trial on validity is warranted.

[7] Should this Court deny Wi-LAN's Renewed Motion for Judgment As A Matter Of Law Of No Invalidity, as explained in Wi-LAN's Renewed Motion, the jury's invalidity findings are against the great weight of the evidence.  Therefore, at the very least, Wi-LAN is entitled to a new trial on validity.

**CONCLUSION**

Wi-LAN acknowledges that the Court has invested considerable resources in the first trial against the Defendants, but a new trial is particularly warranted here. Defendants' strategy was to confuse the jury to the point where there could be no clarity on how the issue of infringement should even be decided. In doing so, Defendants avoided the correct framework—the claims and the Court's constructions. This Court should not validate Defendants' strategy by entering judgment of non-infringement without a new trial that adjudicates the question under the correct framework—the claims and the Court's constructions.

For the reasons set forth above, Wi-LAN respectfully requests that this Court grant Wi-LAN's motion for new trial on the issue of infringement and damages, and if the Court denies Wi-LAN's motion for judgment as a matter of law on validity, Wi-LAN also requests a new trial on the validity of the asserted patent claims.

Dated:  August 13, 2013                     Respectfully submitted,

                                            By:  /s/David B. Weaver
                                                  David B. Weaver (TX Bar 00798576)
                                                  Lead Attorney
                                                  Avelyn M. Ross (TX Bar 24027817)
                                                  Ajeet P. Pai (TX Bar 24060376)
                                                  Syed K. Fareed (TX Bar 24065216)
                                                  Jeffrey T. Han (TX Bar 24069870)
                                                  Seth A. Lindner (TX Bar 24078862)
                                                  VINSON & ELKINS LLP
                                                  2801 Via Fortuna, Suite 100
                                                  Austin, TX 78746
                                                  Tel:  (512) 542-8400
                                                  Fax: (512) 236-3476
                                                  dweaver@velaw.com
                                                  aross@velaw.com
                                                  apai@velaw.com
                                                  sfareed@velaw.com
                                                  jhan@velaw.com
                                                  slindner@velaw.com

                                                  Steve R. Borgman (TX Bar 02670300)
                                                  Gwendolyn Johnson Samora
                                                  (TX Bar 00784899)
                                                  VINSON & ELKINS LLP
                                                  1001 Fannin Street, Suite 2500
                                                  Houston, TX 77002-6760
                                                  Tel: (713) 758-2222
                                                  Fax: (713) 758-2346
                                                  sborgman@velaw.com
                                                  gsamora@velaw.com

                                                  **Local Counsel**
                                                  Johnny Ward (TX Bar No. 00794818)
                                                  Wesley Hill (TX Bar No. 24032294)
                                                  Claire Abernathy Henry
                                                  (TX Bar No. 24053063)
                                                  Ward & Smith Law Firm
                                                  P.O. Box 1231
                                                  1127 Judson Rd., Ste. 220
                                                  Longview, TX 75606-1231
                                                  Tel:  (903) 757-6400
                                                  Fax: (903) 757-2323
                                                  jw@jwfirm.com
                                                  wh@jwfirm.com
                                                  claire@wsfirmcom
                                                  ***Attorneys for Plaintiff Wi-LAN Inc.***

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service on this the 13th day of August, 2013.


*/s/David B. Weaver*
David B. Weaver