**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| WI-LAN INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 6:10–CV–521–LED |
| ALCATEL–LUCENT USA INC., *et al*., | |
| Defendants. | |

| | |
|---|---|
| WI-LAN INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 6:13–CV–252–LED |
| HTC CORPORATION, *et al*., | |
| Defendants. | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR NEW TRIAL CONCERNING THE NON-INFRINGEMENT OF THE PATENTS-IN-SUIT

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Points and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   A.  Defendants did not "demonize" Wi-LAN. . . . . . . . . . . . . . . . . . . . . . 2

   B.  Defendants did not "distort[] the Court's claim
      construction." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      1.  Wi-LAN is not entitled to a new trial regarding the
         overlay-code patents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

         a.  Defendants' experts applied the Court's
            construction for "overlay code" in the overlay-code
            patents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            i.  Whether the accused products could infringe
               without a "separate" overlay code was a fact
               issue, not a claim-construction issue. . . . . . . . . . . . . 3

            ii.  The Court did not reject Defendants' position
               that the additional overlay codes must be
               separate from the orthogonal code. . . . . . . . . . . . . . 5

            iii.  Wi-LAN ignores the second part of the Court's
               claim construction. . . . . . . . . . . . . . . . . . . . . . . . . 6

         b.  Defendants' experts testified properly regarding the
            "storage" element in the overlay-code patents. . . . . . . . . . . . . . . . . . 6

         c.  Defendants' experts testified properly regarding the
            "selectively operable" element in the overlay-code
            patents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   C.  Wi-LAN is not entitled to a new trial on the intercell-
      interference patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      1.  Defendants' experts testified properly regarding the
         "indicative of  . . . interference" element of the
         intercell-interference patent. . . . . . . . . . . . . . . . . . . . . . . . . 10

      2.  Defendants' experts testified properly regarding the
         "channel pool" element of the intercell-interference
         patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

D.  Wi-LAN is not entitled to a new trial on validity and
damages.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

E.  The jury was not confused. . . . . . . . . . . . . . . . . . . . . . . . .   15

Conclusion   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Certificate of Service   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

# TABLE OF AUTHORITIES

*Dawson v. Wal-Mart Stores, Inc.,*
   978 F.2d 205 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place,*
   62 F.3d 767 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Morreale v. Downing,*
   630 F.2d 286 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sibley v. Lemaire, ,*
   184 F.3d 48 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*z4 Techs. Inc. v. Microsoft Corp.,*
   No. 6:06-cv-142, 2006 U.S. Dist. LEXIS 58374 (Aug. 18, 2006 . . . . . . . . . . . . . . . . 1

## PRELIMINARY STATEMENT

The jury heard and carefully considered the evidence in this case, weighed the credibility of the witnesses, and rendered its verdict. Wi-LAN's motion for new trial attempts to pick out sound bites from the testimony of Defendants' experts (often invited by Wi-LAN's own lawyers) to suggest that they testified improperly. Had the testimony actually been improper, Wi-LAN's counsel certainly would have objected at trial. But not a single piece of testimony in Wi-LAN's motion was the subject of an objection or request for limiting instruction. Wi-LAN has not met the high burden necessary to obtain a new trial and should therefore be denied.

## LEGAL STANDARD

A motion for new trial under Rule 59 is addressed to the trial court's discretionary authority, and a court's denial of such a motion will be reversed "only for an abuse of discretion." *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place*, 62 F.3d 767, 774 (5th Cir. 1995). A new trial may be granted on evidentiary grounds, but only if, at a minimum, the verdict is shown to be against the great weight of the evidence. *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992). The court must view the evidence "in a light most favorable to the jury's verdict, and . . . the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary conclusion." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992). A new trial may also be granted on grounds of prejudicial legal error, such as the erroneous admission or exclusion of evidence. *z4 Techs. Inc. v. Microsoft Corp.*, No. 6:06-cv-142, 2006 U.S. Dist. LEXIS 58374, at *38 (Aug. 18, 2006 E.D. Tex). Parties moving for new trial must demonstrate that any alleged prejudicial error was in fact harmful. *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999). Wi-LAN cannot meet its heavy burden for a new trial. Wi-LAN cannot meet this heavy burden.

**POINTS AND AUTHORITIES**

## A.  Defendants did not "demonize" Wi-LAN.

Wi-LAN begins its Motion with strong language, claiming that Defendants "demoniz[ed]" Wi-LAN's licensing model to confuse the jury and generate "an immense prejudice against Wi-LAN."[1] Wi-LAN does not cite any testimony for the alleged "demonization," but presumably it is referring to Defendants' cross-examination of Wi-LAN's corporate representative with Exhibit DX-435, which set forth Wi-LAN's "Core Licensing Methodology" of filing multiple lawsuits in serial fashion against potential licensees. Before the jury's verdict, Wi-LAN proudly included this document on its website, but after the verdict, it was removed from the site for reasons known only to Wi-LAN. In any event, Wi-LAN did not object to the exhibit, and thus, any complaint that it was unfairly prejudicial rings hollow.

## B.  Defendants did not "distort[] the Court's claim construction."

Wi-LAN accuses Defendants of "distort[ing] the Court's claim constructions."[2] Nothing could be further from the truth. Indeed, the record clearly shows that each of Defendants' technical experts painstakingly and dutifully applied the Court's constructions in rendering their opinions. What Wi-LAN complains about is the experts' testimony — often elicited by Wi-LAN's own lawyers on cross-examination — providing the details of the experts' opinions. Notably, Wi-LAN did not object at any time during the trial that Defendants or their experts were using an incorrect construction for any of the terms about which it now complains, nor did it request any limiting instructions. Put plainly, Wi-LAN's expert, Dr. Wells, simply lost the credibility battle.

_____

[1]    Motion at 1.

[2]    *Id.*

**1. Wi-LAN is not entitled to a new trial regarding the overlay-code patents.**

    **a. Defendants' experts applied the Court's construction for "overlay code" in the overlay-code patents.**

        **i. Whether the accused products could infringe without a "separate" overlay code was a fact issue, not a claim-construction issue.**

The Court construed "overlay code" as "an additional code that subdivides an orthogonal channel." *Memorandum Opinion and Order* (May 16, 2012), ECF No. 200, at 14. Contrary to Wi-LAN's contention that "Defendants' experts grafted a variety of limitations on the asserted claims,"[3] Defendants' experts all applied this construction in forming their opinions.[4] In essence, Wi-LAN's argument improperly characterizes a factual dispute at the trial as a claim-construction issue. The factual dispute was whether a single OVSF code defined by the HSDPA standard was both the claimed "orthogonal code" and the "overlay code," which the Court construed to be an *additional* code other than the orthogonal code. There was substantial evidence that, as a factual matter, a single OVSF code did not meet both required claim elements.[5] Thus, the Court should not disturb the jury's verdict of non-infringement.

Moreover, Wi-LAN is complaining about testimony that its own lawyers elicited on cross-examination. Even though none of Defendants' experts had stated any opinions on direct about whether an overlay code had to be "separate" from the orthogonal code, Wi-LAN's counsel

---

    [3]    Motion at 3.

    [4]    *See, e.g.*, **Ex. C:** Trial Tr. at 17:18–18:1 (July 11, 2013 (Morning Session) (Dr. Wicker)); *id.* at 23:24–24:7 (Dr. Wicker); *id.* at 29:8–19 (Dr. Wicker); *id.* at 100:12–101:3 (Dr. Wicker); *id.* at 143:11–18 (Dr. Olivier); *id.* at 146:6–9 (Dr. Olivier); *id.* at 157:20–158:2 (Dr. Olivier); **Ex. D:** Trial Tr. at 17:4–13 (July 11, 2013 (Afternoon Session) (Dr. Akl)); *id.* at 20:15–20 (Dr. Akl).

    [5]    **Ex. C:** Trial Tr. at 22:24–26:12 (July 11, 2013 (Morning Session)); *id.* at 30:19–32:14; *id.* at 81:24–82:6; *id.* at 100:8–102:7; *id.* at 117:8–13; *id.* at 118:11–20; *id.* at 161:17–23; **Ex. D:** Trial Tr. at 12:19–15:7 (July 11, 2013 (Afternoon Session)).

opened that door by asking for Dr. Wicker's and Dr. Olivier's opinions on the subject.[6] When they opined that an "additional code" indicates a code that is separate from the claimed orthogonal code, Wi-LAN did not object or seek to exclude these opinions.[7] This presented the factual question of whether a single OVSF code could satisfy both claim elements.

Wi-LAN's arguments are also undermined by the testimony of one of the inventors, Martin Lysejko,[8] who explained the relationship between the orthogonal code and the overlay code. As a factual matter, Mr. Lysejko testified that the orthogonal code (or "RW code") and overlay code are "independent of each other."[9] In short, the jury had and understood the facts necessary to determine whether the Defendants' products infringed the asserted claims and determined that the products did not.

In fact, Wi-LAN's counsel specifically recognized that it was for the jury to decide whether to accept the experts' opinions. In crossing Dr. Olivier, counsel asked: "[I]f the jury disagrees with your reading of that term ["overlay code"], then the jury's free to disregard your opinions, correct?"[10] Now that the jury has disagreed with Wi-LAN's assertion of fact that a single OVSF code can be both an orthogonal code and an additional overlay code, Wi-LAN asks the Court to order a new trial by claiming that Defendants applied the improper construction.

Wi-LAN's argument is not only incorrect, it is also untimely. If Wi-LAN believed the

---

[6]   **Ex. C:** Trial Tr. at 117:13–15 (July 11, 2013 (Morning Session) ("Q. So you agree with me, your opinions are based on your view of the Court's construction that an additional code must be a separate code.") (Dr. Wicker); *id.* at 161:17–20 ("Q. Now, so you agree with Dr. Wicker that in the definition of overlay code, when it says additional, that the Court's claim construction means separate, correct?) (Dr. Olivier).

[7]   *See id.* at 117:16–23 (Dr. Wicker); *id.* at 161:21–23.

[8]   Unlike co-inventor Paul Struhsaker, Mr. Lysejko was not a fact witness being paid by Wi-LAN.

[9]   **Ex. E:** Trial Tr. at 11:5–13 (July 12, 2013 (Morning Session)).

[10]   **Ex. C:** Trial Tr. at 161:25–162:2 (July 11, 2013 (Morning Session)).

testimony it elicited was improper, it should have objected or requested a limiting instruction. It did not.[11] Having failed to do so, its current complaints do not justify a new trial. *See, e.g.*, *Morreale v. Downing*, 630 F.2d 286, 290 (5th Cir. 1980).

### ii.   The Court did not reject Defendants' position that the additional overlay codes must be separate from the orthogonal code.

Wi-LAN also asserts that the Court "expressly reject[ed] Defendants' position" that the additional overlay code is separate from the orthogonal code.[12] Wi-LAN is incorrect. Indeed, the opposite is true. As shown by the arguments at the *Markman* hearing, the claim-construction issue was not whether an additional code must be a separate code. Rather, the arguments centered on whether the two codes could be applied simultaneously or in series. In fact, the Court recognized that having an "additional code" implied a separate code, as it asked:  "If it is an additional code, then wouldn't that imply that it was separate?"[13]

The Court's claim-construction ruling is consistent with this understanding. It explained that, although the codes could be applied simultaneously, the overlay code is not the same code as the orthogonal code, but rather is "an *additional code* that subdivides an orthogonal channel." *Memorandum Opinion and Order* (May 16, 2012), ECF No. 200, at 14. The Court further noted that *Wi-LAN agreed* that "an overlay code is an additional code **other than the orthogonal code**." *Id.* (emphasis added).

Wi-LAN's trial position that a single OVSF code can satisfy both limitations is therefore

---

[11]   Wi-LAN deceptively states that it "raised its objection to Defendants' non-infringement theory during Defendants' cross-examination of Dr. Wells." Motion, at 4 (citing Trial Tr. at 100:24–101:17 (July 9, 2013 (Morning Session)); *id.* 115:24–116:18). These objections, however, were directed to whether the claimed orthogonal code and overlay code could be applied simultaneously. None of Defendants' experts asserted that the claims precluded simultaneous application of the two codes, and Wi-LAN does not now contend that they did. Wi-LAN's suggestion that it objected to the testimony about which it now complains is baseless.

[12]   Motion, at 5.

[13]   **Ex. A:** Hearing Tr. at 59:24-25 (Apr. 26, 2012).

contrary to the Court's construction, and it is no surprise that the jury rejected it.

### iii. Wi-LAN ignores the second part of the Court's claim construction.

Wi-LAN also ignores the remaining portion of the "overlay code" construction, namely that the overlay code must "subdivide[] an orthogonal channel." Defendants' experts testified that the OVSF codes in the UMTS Standard for HSDPA and the accused products do not subdivide any orthogonal channels.[14] Specifically, they testified that in the OVSF code tree defined by the standard, there is exactly one code per channel.[15] Thus, channels cannot be subdivided because higher-level codes are "blocked" from use. The jury heard this testimony, weighed the credibility of the witnesses, and determined that the accused products do not infringe. Wi-LAN is not entitled to a new trial on infringement.

### b. Defendants' experts testified properly regarding the "storage" element in the overlay-code patents.

If the Court finds that Wi-LAN's complaints about the "overlay codes" do not warrant a new trial, then the Court need not consider Wi-LAN's additional arguments regarding the "storage" and "selectively operable" elements, as these elements appear in only some of the asserted overlay-code patent claims. Defendants, however, address Wi-LAN's arguments in the interest of completeness and because they are as baseless as its arguments about the overlay codes.

Claim 5 of the '326 Patent and claim 11 of the '819 Patent both state: "wherein the orthogonal code generator *is* a storage arranged to store *the set of orthogonal codes*."[16] Dr. Wicker explained that the accused products do not meet this limitation because the "set of codes"

---

[14]   **Ex. C:** Trial Tr. at 22:17–23:11 (July 11, 2013 (Morning Session); *id.* at 25:12–28:15; *id.* at 145:25–148:18.

[15]   *E.g.*, *id.* at 6:21–8:1; *id.* at 118:17–20; *id.* at 145:21–146:5; *id.* at 158:13–18; **Ex. D:** Trial Tr. at 21:7–19 (July 11, 2013 (Afternoon Session)).

[16]   *See, e.g.*, **Ex. F:** '326 Patent (PX 1) at 29:23–24.

in the claims is "all of the codes" and the accused products never store the set, bur rather store, at most, only a single code.[17] Wi-LAN misrepresents Dr. Wicker's testimony on this issue and accuses him of "add[ing] a negative limitation" into the claims that require the "orthogonal code generator" to be a "storage."[18] Wi-LAN's assertion is baseless.

Indeed, Wi-LAN's argument is deceptive because it cites to Dr. Wicker's testimony about the specification's description of a technique for generating codes, namely "on-the-fly" generation.[19]  When testifying about what the claims cover, Dr. Wicker never asserted the claims exclude on-the-fly code generation. On the contrary, Dr. Wicker testified that attempting to limit the claims to embodiments shown in the patent is improper.[20] In short, Wi-LAN's motion attributes testimony to Dr. Wicker that simply does not exist. Dr. Wicker analyzed the claim language and testified that the accused products did not meet that claim language.

Further, even if Dr. Wicker had testified about the scope of the "storage" limitation in a way that Wi-LAN believed was incorrect, it could have objected. But once again, it did not. In fact, Wi-LAN's counsel cross-examined Dr. Wicker about his testimony regarding the "storage" limitation, but notably, did not ask a single question about an alleged "negative limitation" in the claims. Wi-LAN's new-trial motion should be denied.

### c. Defendants' experts testified properly regarding the "selectively operable" element in the overlay-code patents.

As with the "storage" limitation, if the Court concludes that a new trial is not warranted based on Wi-LAN's "overlay code" argument, the Court need not address Wi-LAN's arguments about the claims with the "selectively operable" language. Nevertheless, Wi-LAN's arguments

---

[17]   *See* **Ex. C:** Trial Tr. at 47:17–48:14 (July 11, 2013 (Morning Session); *id.* at 51:3–23.

[18]   Motion at 6.

[19]   *See id.* (citing Trial Tr. at  42:11-43:5 (July 11, 2013 (Morning Session)).

[20]   **Ex. C:** Trial Tr. at  88:23–89:1 (July 11, 2013 (Morning Session).

about these claims also fail.

In arguing that Dr. Wicker and Dr. Olivier misstated the scope of the claims in the '326 Patent that require a "second encoder, selectively operable instead of the TDM encoder," Wi-LAN misrepresents Dr. Wicker's testimony. Specifically, Wi-LAN asserts that Dr. Wicker "distorted the claim language and interpreted 'selectively operable' to mean that *a single frequency channel* is either divided using overlay codes, or divided using TDM techniques, but both cannot be used at the same time."[21] Dr. Wicker offered no such testimony.

Rather, Dr. Wicker explained that if a data item is to be sent to a user, the system has a choice — it can send that data item using overlay codes or using TDM techniques, but it cannot do it both ways.[22] And that is exactly what the "selectively operable" language in the claims of the '326 Patent requires. Claim 5, for example, requires "a second encoder, *selectively operable instead of the TDM encoder*, to apply the overlay code . . . to *said data item*."[23] Because the claim requires the overlay code to be applied to "said data item," there must be an antecedent basis for that data item in the claim. There is. Claim 5 requires "a TDM encoder to apply time division multiplexing (TDM) techniques to *the data item* in order to insert *the data item* within a time slot of the orthogonal channel." Under fundamental rules of claim construction, "the data item" and "said data item" are necessarily the same data item — i.e., a particular data item sent over a particular orthogonal channel.

The "selectively operable" language provides the system with a choice, as shown by the switch 109 in Figure 7B of the patents-in-suit. If it receives a data item to be sent to a user, the system can encode that data item using TDM techniques, or alternatively, it can encode it using

---

[21]   Motion at 8 (emphasis added).

[22]   *See* **Ex. C:** Trial Tr. at 34:3–19 (July 11, 2013 (Morning Session)).

[23]   **Ex. F:** '326 Patent (PX 1) at 29:18–20.

an overlay code. This is exactly what Dr. Wicker said. The "selectively operable" limitation in the asserted claims of the '326 Patent is not, as Wi-LAN argues, addressed to the different situation where one data item (e.g., user data) is sent on one orthogonal channel using TDM techniques and a different data item (e.g., control data) is sent over a separate orthogonal channel using overlay codes. Rather, that different scenario, which is depicted in Figure 15A of the patents-in-suit, is addressed by different claims, such as claim 11 of the '819 Patent, that provide for the use of overlay codes on certain channels and the use of TDM techniques on others.

In claim 11 of the '819 Patent, which Wi-LAN asserted at trial, the "second encoder" is not "selectively operable instead of the TDM encoder." Rather, the second encoder applies overlay codes to a data item on an orthogonal channel, while the TDM encoder applies TDM techniques to different data items "to be sent over a traffic channel."[24] Wi-LAN's contention that all asserted claims must be depicted in Figure 15A is simply incorrect. Dr. Wicker properly testified that Figure 15A does not show the "selectively operable" second encoder required by the asserted claims of the '326 Patent.

Regardless, Wi-LAN did not object or request a limiting instruction, and its belated objections do not justify a new trial.

## C.  Wi-LAN is not entitled to a new trial on the intercell-interference patent.

As it did with the overlay-code patents, for the '327 Patent, Wi-LAN complains about testimony from Defendants' experts to which it neither objected nor requested a limiting instruction. And just as before, Wi-LAN's arguments misstate the testimony and carefully avoid discussing the actual claim language. Wi-LAN's arguments fail and do not support the granting of a new trial.

---

[24]   **Ex. H:** '819 Patent (PX 3) at 29:6–8.

**1.  Defendants' experts testified properly regarding the "indicative of . . . interference" element of the intercell-interference patent.**

In its first argument regarding the '327 Patent, Wi-LAN states that "Dr. Wicker testified that the parameter [indicative of interference from other cells] must 'only measure the interference from other cells.'"[25] That assertion misstates Dr. Wicker's testimony. What Wi-LAN quotes is its counsel's *question* to Dr. Wicker, who responded that the parameter must "indicate[] the interference from other cells."[26] The entire line of questioning by Wi-LAN's counsel shows that Dr. Wicker was not placing a limitation that the received parameter only measure inter-cell interference, but rather that he correctly stated that the parameter must indicate the presence of inter-cell interference:

> Q.  Now, you argue that the Alcatel-Lucent products don't infringe the '327 patent because the CQI doesn't measure essentially only intercell interference. Isn't that what you're arguing?
>
> A.  Yes.
>
> Q.  And it doesn't just need to be indicative of. So we can strike that language. It needs to be only measuring whether the wireless link is subject to interference solely from signals generated by other cells. That's really your opinion, isn't it, sir?
>
> A.  It is my opinion that the analyzer has to receive parameters indicative of, and I'm simply interpreting that word indicative.
>
> Q.  So you interpreted the word "indicative of" to mean only measuring the interference from other cells?
>
> A.  That's right. It indicates the interference from other cells.
>
> Q.  And you went through testimony where you said there's interference that's caused by other things, correct?
>
> A.  That's correct.[27]

---

[25]  Motion at 10.

[26]  **Ex. C:** Trial Tr. at 84:22–25 (July 11, 2013 (Morning Session))

[27]  *Id.* at 84:8–85:4.

Dr. Wicker's testimony on cross-examination does not contradict his direct testimony that the "Channel Quality Indicator," or CQI, in the accused products is not a parameter indicative of interference from other cells. In fact, Wi-LAN does not challenge Dr. Wicker's testimony that the CQI can be affected by numerous things, including obstructions, intra-cell interference, intercell interference, quality of the phone, distance, power control, and weather.[28] Dr. Wicker's testimony is also undisputed that the base station cannot tell why a mobile phone reports a change in its CQI.[29]

In any event, Wi-LAN did not object or request a limiting instruction relating to Dr. Wicker's testimony.

Separately, Wi-LAN does not challenge Dr. Olivier's testimony about this topic. Instead, Wi-LAN falsely states: "Dr. Olivier provided no additional explanation other than to simply agree with Dr. Wicker's opinions and provide conclusory statements."[30] This is incorrect. Dr. Olivier provided a detailed explanation of what the CQI does, based on the *3G Evolution* textbook authored by four Ericsson engineers and based on detailed technical documents for the accused Ericsson base stations.[31] Contrary to Wi-LAN's misrepresentations, Dr. Olivier's testimony was actually in some ways more detailed than Dr. Wicker's and confirmed that the CQI is not a parameter "indicative of whether [a] wireless link is subject to interference from signals generated" by other cells, as required by the asserted claims of the '327 Patent. Substantial evidence supports the jury's verdict, and Wi-LAN is not entitled to a new trial.

---

[28]   *Id.* at 66:1–68:9.

[29]   *Id.* at 68:10–69:1.

[30]   Motion at 10 n.5.

[31]   *See* **Ex. C:** Trial Tr. at 152:2–156:5 (July 11, 2013 (Morning Session)).

**2. Defendants' experts testified properly regarding the "channel pool" element of the intercell-interference patent.**

Wi-LAN also contends that Dr. Wicker imported a "locking" limitation from unasserted claim 5 of the '327 Patent into claim 11. This is not true. Claim 11 requires: "a channel controller being responsive to the output signal from the analyser, ***to selectively reduce the*** number of code division multiplexed ***channels in the channel pool***."[32] The specification for the '327 Patent describes two ways to reduce the number of channels in the channel pool. First, a number of channels can be designated as "locked channels."[33] Second, the central terminal may actually disable one or more of the modems in the central terminal that are used to create wireless links.[34] Under either approach, because channels are removed from the channel pool, they are not available for the establishment of wireless links.

Wi-LAN makes much of the fact that some of Dr. Wicker's testimony referred to the "locking" of channels.[35] What Wi-LAN fails to acknowledge, however, is that in one of the pieces of testimony it cites,[36] Dr. Wicker was describing one of the embodiments described in the specification — not the claim limitations. And in the second piece of testimony, while Dr. Wicker used the words "locked out" initially, he immediately corrected himself and clarified that the claim covers any technique by which a channel is removed from the channel pool, thereby making those channels unavailable for use:

> Q. So let's move to the last element of Claim 11. And could you remind us again what the last element requires.
>
> A. Okay. That's the channel controller. ***This is the portion of the claim***

---

[32] **Ex. G:** '327 Patent (PX 2) at 31:50–52 (emphasis added).

[33] *See, e.g., id.* at 3:23–30.

[34] *See, e.g., id.* at 25:61–67.

[35] *See* Motion at 10.

[36] **Ex. C:** Trial Tr. at 55:12–13 (July 11, 2013 (Morning Session).

> that takes that estimate of how channels are being affected by other cell interference and takes some of those cells *out of the people [sic: pool], takes them out of commission*, and says: These channels cannot be used by anybody in the cell, because of this interference from other cells.
>
> Q.  And do HSDPA-compatible base stations satisfy that element of Claim 11?
>
> A.  No.
>
> Q.  And why do you say that?
>
> A.  We talked a lot about HSDPA and the 15 data channels. They're going to be allocated to someone within the cell if there's data to send. There is no situation in which one of those channels is locked out, *taken out of use* because of interference from other cells. It simply doesn't happen.[37]

Contrary to Wi-LAN's assertions, Dr. Wicker clearly testified that Claim 11's requirement of reducing the number of channels in the channel pool is not limited to "designating a channel as a locked channel" but rather could be satisfied any time a channel is taken out of use in response to the receipt of parameters indicative of inter-cell interference.

Moreover, Wi-LAN does not challenge Dr. Olivier's testimony on this issue. Dr. Olivier testified that the accused base stations do not meet the limitation of "selectively reducing the number of code division channels in the pool in order to reduce the effect of interference from other cells."[38] As Dr. Olivier explained, the channel pool is for the entire central terminal and not for a particular user.[39] On cross-examination, Wi-LAN's counsel did not question Dr. Olivier about this opinion. It cannot now assert that the jury was confused.

The jury rendered its just verdict after carefully considering the evidence and weighing the credibility of the witnesses. Wi-LAN's motion for a new trial should be denied.

---

[37]   *Id.* at 69:22–70:16 (emphasis added).

[38]   *Id.* at 149:11–19, 151:6–152:1, 156:1–16.

[39]   *Id.* at 156:14–16.

– 13 –

**D.  Wi-LAN is not entitled to a new trial on validity and damages.**

Wi-LAN claims that because the jury answered Question 4 of the Verdict Form "finding zero damages," the jury must have been confused.[40] This is simply wrong. As an initial matter, the jury did not answer Question 4 by saying Wi-LAN was entitled to "zero damages." Rather, the jury placed the symbol "ø" in the space for the damages:

As the Court is aware, in mathematics, the null sign or "ø", is used to designate the empty set. Far from being confused, the jury understood completely. Indeed, during the trial, one of Defendants' damages experts, Christopher Bakewell, explained what would happen if the jury found that the patents were not infringed or were invalid:

> Q.  Now, if the jury finds that there is no infringement or that the patents are invalid, are there any damages in this case?
>
> A.  Then there's no damages. The damages amount would be the equivalent of zero **or really would be a null value**, because the damages wouldn't be an issue.[41]

The jury saw Wi-LAN's case for what it was — an improper attempt to coerce the Defendants to take licenses by forcing them to engage in costly litigation over invalid patents that were not infringed. Based on that understanding, the jury made clear that Wi-LAN's request

---

[40]   Motion at 10.

[41]   **Ex. D:** Trial Tr. at 58:10-15 (July 11, 2013 (Afternoon Session)) (emphasis added).

for damages was a nullity.[42]

### E.  The jury was not confused.

Finally, Wi-LAN repeatedly contends that Defendants' trial strategy confused the jury. The record, however, shows that the jury was not confused in any way. Indeed, the jury was afforded the opportunity after each witness to submit written questions to clarify any points of confusion. Rather than showing confusion, the jury's questions demonstrated that it had a substantial grasp on the technical aspects of the case. In fact, following the submission of questions for Dr. Wicker, the Court commented: "I continue to be amazed at our East Texas juries' comprehension of the technology.[43] Accordingly, the Court should reject Wi-LAN's jury-confusion argument as baseless.

### CONCLUSION

For the reasons set forth above, the jury's verdict was supported by evidence. Accordingly Defendants respectfully request that the Court Wi-LAN's Motion in its entirety.

---

[42]  Incredibly, Wi-LAN's motion states that its damages expert, John Jarosz, offered an opinion of a reasonable-royalty amount at trial. Motion at 10. He did not. The Court twice struck Mr. Jarosz's opinions such that, at trial, he could not provide an ultimate opinion with respect to damages but rather only had "inputs that the jury can consider." **Ex. B:** Trial Tr. at 148:19–25 (July 10, 2013 (Morning Session)). The jury considered those "inputs" and found the damages to be the empty set.

[43]  **Ex. C:** Trial Tr. at 124:9–11 (July 11, 2013 (Morning Session)).

Dated: August 30, 2013                    Respectfully submitted,

                                          By: */s/ Martin R. Bader*_____

                                          Stephen S. Korniczky (pro hac vice)
                                          Martin R. Bader (pro hac vice)
                                          James Geriak (pro hac vice)
                                          SHEPPARD, MULLIN, RICHTER & HAMPTON
                                          12275 El Camino Real, Suite 200
                                          San Diego, California 92130-2006
                                          Tel: 858-720-8924
                                          Fax: 858-847-4892
                                          skorniczky@sheppardmullin.com
                                          mbader@sheppardmullin.com
                                          dyannuzzi@sheppardmullin.com
                                          lhsu@sheppardmullin.com
                                          gbuccigross@sheppardmullin.com

                                          Eric Hugh Findlay (TX Bar 00789886)
                                          Roger Brian Craft (TX Bar 04972020)
                                          FINDLAY CRAFT
                                          6760 Old Jacksonville Highway
                                          Suite 101
                                          Tyler, Texas 75703
                                          Tel: 903-534-1100
                                          Fax: 903-534-1137
                                          efindlay@findlaycraft.com
                                          bcraft@findlaycraft.com

                                          ATTORNEYS FOR DEFENDANTS
                                          HTC CORPORATION, HTC AMERICA, INC.
                                          AND EXEDEA INC.

Dated: August 30, 2013                    Respectfully submitted,

                                          By: */s/Robert A. Appleby*

                                          Gregory S. Arovas (pro hac vice)
                                          Robert A. Appleby (pro hac vice)
                                          Jeanne M. Heffernan (pro hac vice)
                                          Akshay S. Deoras (pro hac vice)
                                          KIRKLAND & ELLIS LLP
                                          601 Lexington Avenue
                                          New York, NY 10022
                                          Tel: (212) 446-4800
                                          Fax: (212) 446-4900
                                          Alcatel-Lucent-Wi-LAN-Defense@kirkland.com

                                          Michael E. Jones
                                          Allen F. Gardner
                                          POTTER MINTON PC
                                          110 N. College, Suite 500 (75702)
                                          P.O. Box 359
                                          Tyler, Texas 75710
                                          (903) 597 8311
                                          (903) 593 0846 (Facsimile)
                                          mikejones@potterminton.com
                                          allengardner@potterminton.com


                                          ATTORNEYS FOR DEFENDANT
                                          ALCATEL-LUCENT USA INC.

Dated: August 30, 2013                    Respectfully submitted,


                                          */s/ Bruce S. Sostek*___
                                          Bruce S. Sostek (Lead Attorney)
                                           State Bar No. 18855700
                                           Bruce.Sostek@tklaw.com
                                          Richard L. Wynne, Jr.
                                           State Bar No. 24003214
                                           Richard.Wynne@tklaw.com

                                          THOMPSON & KNIGHT LLP
                                          1722 Routh Street, Suite 1500
                                          Dallas, Texas 75201
                                          214.969.1700
                                          214.969.1751 (facsimile)


                                          ATTORNEYS FOR DEFENDANTS ERICSSON INC.,
                                          TELEFONAKTIEBOLAGET LM ERICSSON, SONY
                                          MOBILE COMMUNICATIONS AB, and SONY MOBILE
                                          COMMUNICATIONS (USA) INC.

**CERTIFICATE OF SERVICE**

This is to certify that on the 30th day of August, 2013, a copy of the foregoing document was served on counsel of record by electronic mail.

Richard L. Wynne, Jr.
Richard L. Wynne, Jr.