**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **WI-LAN INC.,** § | |
| § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | **Case No. 6:10-cv-521** |
| § | |
| **ALCATEL-LUCENT USA INC., ET AL.,** § | |
| § | |
| **Defendants.** § | |
| § | |

## ORDER

Before the Court are the parties' post-trial motions.  Having considered the parties' written and oral arguments, the Court **DENIES** Wi-LAN Inc.'s ("Wi-LAN") Motion for a New Trial Concerning Non-Infringement (Docket No. 481), **DENIES** Wi-LAN's Renewed Motion for Judgment as a Matter of Law of No Invalidity (Docket No. 482), and **DENIES** Defendants' Motion to Recover Attorneys' Fees (Docket No. 475) for the reasons discussed below.

## BACKGROUND

On October 5, 2010, Wi-LAN filed this action against Alcatel-Lucent USA Inc. ("Alcatel-Lucent"); Telefonaktiebolaget LM Ericsson and Ericsson Inc. (collectively, "Ericsson"); Sony Mobile Communications AB and Sony Mobile Communications (USA) Inc. (collectively, "Sony Mobile"); HTC Corporation, HTC America, Inc., and Exedea Inc. (collectively, "HTC"); and LG Electronics, Inc., LG Electronics Mobilecomm U.S.A., Inc., and LG Electronics U.S.A., Inc. (collectively, "LG") alleging infringement of U.S. Patent Nos. 6,381,211 ("the '211 Patent"); 6,088,326 ("the '326 Patent"); 6,195,327 ("the '327 Patent"); and 6,222,819 ("the '819 Patent") (collectively, the "patents-in-suit").  The '211 Patent, '326 Patent,

and '819 Patent generally describe methods to increase the number of supported subscriber terminals on wireless telecommunications systems, while the '327 Patent describes a method to decrease intercellular interference in a wireless telecommunications system.  Defendants denied infringement and alleged the claims asserted were invalid based on anticipation and obviousness.

LG was dismissed from this action on December 30, 2010.  *See* Docket No. 60.  All other Defendants went to trial in July 2013.  After a six-day trial, the jury found Defendants did not infringe any of the asserted claims.  Further, the jury found that claims 2, 5, and 9 of the '326 Patent; claim 11 of the '819 Patent, and claims 2 and 5 of the '211 Patent were invalid due to obviousness and claims 2 and 5 of the '326 Patent and claims 2 and 5 of the '211 Patent were invalid due to anticipation.  *See* Docket No. 465.  Since the conclusion of the trial, Alcatel-Lucent and HTC have also been dismissed from this action and have withdrawn their participation in the instant Motions.  *See* Docket Nos. 500, 520.

## WI-LAN'S MOTION FOR NEW TRIAL CONCERNING NON-INFRINGEMENT

Wi-LAN moves for a new trial concerning non-infringement of all asserted claims under Federal Rule of Civil Procedure 59.  Wi-LAN argues a new trial on non-infringement is justified because Defendants confused the jury and mischaracterized the Court's claim construction.  Docket No. 481 at 1.

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 59, a new trial may be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."  *Smith v. Transworld Drilling*

*Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985).  The Court must view the evidence "in a light most favorable to the jury's verdict, and [] the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary conclusion."  *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992).

## ANALYSIS

Wi-LAN asserts that Defendants misled and confused the jury in several ways.  Wi-LAN claims Defendants' experts read an additional limitation into the asserted claims of the '326, '819, and '211 Patents by stating that the overlay code had to be a "separate" code from the orthogonal code.  Docket No. 481 at 2.  Defendants argue their experts' testimony on overlay codes conformed to the Court's construction and that any disparity between the parties on overlay codes is a fact issue for the jury.  Docket No. 492 at 3–6.  On this issue, the testimony by the Defendants' experts was well within the scope of the Court's claim construction.  The Court construed "overlay code" as "an additional code that subdivides an orthogonal channel."  Docket No. 200 at 14.  Defendants' experts testified that in the accused products, "[t]here was no additional code that was used to subdivide any of the existing channels."  7/11/2013 A.M. Trial Tr. at 23:4–6.  Further, the opinion that "an additional code" must be separate is one reasonable interpretation under the Court's construction.  In fact, at the *Markman* hearing Wi-LAN stated that "an overlay code is an additional code other than the orthogonal code."  Docket No. 200 at 14.  Accordingly, the testimony of the Defendants' experts on this issue was fair game and not misleading to the jury.

Wi-LAN also argues the Defendants' experts mischaracterized claim 5 of the '326 Patent and claim 11 of the '819 Patent by requiring the two techniques for generating orthogonal codes

be mutually exclusive.  Docket No. 481 at 6.  Defendants again assert that their experts testified properly with regard to these claims.  Docket No. 492 at 6–7.  The plain language of claim 5 of the '326 Patent and claim 11 of the '819 Patent requires storage of "the set of orthogonal codes." Defendants' expert Dr. Wicker testified the accused products use the "on-the-fly" method, generating orthogonal codes only as needed, and therefore did not store the set of codes. 7/11/2013 A.M. Trial Tr. at 48:7–10.  Here, the expert merely provided his opinion that the accused product did not infringe the claims and the basis for that opinion.  Again, there is no reason to believe the jury was misled by this testimony.

Further, according to Wi-LAN, Defendants' experts excluded a preferred embodiment of the '326 Patent concerning "selectively operable."  Docket No. 481 at 8–9.  Defendants argue their experts testified appropriately on this issue.  Docket No. 492 at 8–9.  The Defendants' expert, Dr. Wicker, testified that "selectively operable" means the system can use either overlay codes or time division multiplexing, but not both at the same time.  7/11/2013 A.M. Trial Tr. at 34:13–19.  As before, this is reasonable under the language of the asserted claims.  Wi-LAN has presented no evidence indicating why the jury would have misinterpreted this testimony.

Finally, Wi-LAN asserts that Defendants read extraneous limitations into claim 11 of the '327 Patent concerning intercell interference.  Docket No. 481 at 10.  Defendants respond that Wi-LAN is misstating their experts' testimony.  Docket No. 492 at 10.  As with the overlay code issue, this discrepancy was merely a fact issue for the jury to decide.  Dr. Wicker testified that the channel quality indicator ("CQI") parameter in the accused products was not indicative of interference from other cells, as required by claim 11 of the '327 Patent.  7/11/2013 A.M. Trial Tr. at 58:21–59:6.  Dr. Wicker's testimony merely expressed his opinion regarding this issue and the jury was free to accept or reject that opinion.

Viewing the trial record in a light most favorable to the jury verdict, Wi-LAN's arguments fail.  The testimony of the Defendants' experts was appropriate in light of the patents-in-suit and the Court's claim construction.  Wi-LAN's best avenue to address the challenges it makes to Defendants' experts was cross-examination and rebuttal evidence, which Wi-LAN did.  *See Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 595 (1993) ("Vigorous cross–examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  The jury weighed the evidence and credibility of the witnesses and reached its verdict.  Accordingly, a new trial is not warranted and Wi-LAN's Motion for a New Trial Concerning Non-Infringement is **DENIED**.

## WI-LAN'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO INVALIDITY

Wi-LAN challenges the jury's verdict that claims 2, 5, and 9 of the '326 Patent; claim 11 of the '819 Patent; and claims 2 and 5 of the '211 Patent are invalid, arguing there is insufficient evidence of anticipation and insufficient evidence of obviousness.  In the alternative, Wi-LAN requests a new trial based on the same arguments.

## APPLICABLE LAW

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  FED. R. CIV. P. 50(a)(1).  "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie."  *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008).  The Fifth Circuit "uses the same standard to review the verdict that the district court used in first passing on the motion."  *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995).  Thus, a

jury verdict must be upheld, and judgment as a matter of law may not be granted, unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Id.* at 700. The jury's verdict must also be supported by "substantial evidence" in support of each element of the claims. *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004).

A court reviews all evidence in the record and must draw all reasonable inferences in favor of the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).   However, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *Id.*  The moving party is entitled to judgment as a matter of law "only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable juror could return a contrary verdict." *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005).

## ANALYSIS

### A.   *Anticipation and Obviousness Under Tiedemann*

Patents are presumed valid and overcoming this presumption requires clear and convincing evidence. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1354 (Fed. Cir. 2010) (en banc).  A patent claim is invalid as anticipated if the claimed invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention by the applicant.  35 U.S.C. § 102(a).  Anticipation requires finding each and every limitation of the claimed invention in a single prior art reference. *Amgen, Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1366 (Fed. Cir. 2009).

Obviousness is a question of law based on underlying findings of fact. *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009).  Obviousness is based on several factual inquiries: "(1) the

scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art at the time the invention was made; and (4) objective evidence of nonobviousness, if any." *Id.*

At trial, Defendants' invalidity expert, Mark Lanning, testified that a 1994 article titled "CDMA for Cellular and PCS" by Edward G. Tiedemann, Jr. ("Tiedemann") anticipated claims 2 and 5 of the '211 Patent and claims 2 and 5 of the '326 Patent.  7/12/2013 A.M. Trial Tr. at 52:13–21, 54:24–55:2, 56:22–57:1, 59:4–7.  Mr. Lanning also testified that Tiedemann alone rendered obvious claim 9 of the '326 Patent and claim 11 of the '819 Patent.  *Id.* at 62:9–23, 64:4–6.

Wi-LAN argues Tiedemann cannot support a finding of anticipation or obviousness because it fails to disclose "TDM techniques" as required by each of the above-listed claims. Docket No. 482 at 10.  As construed by the Court, "TDM techniques" are "techniques for allocating an interval of time within a predetermined frame period to a data item, based on one or more characteristics associated with the data item."  Docket No. 200 at 11.  Wi-LAN asserts that while Tiedemann discloses "paging channels," the article does not explain the criteria used to allocate time slots to data within the paging channel.  Docket No. 482 at 11.  Additionally, Wi-LAN argues Tiedemann does not support Mr. Lanning's testimony that paging channels are allocated based on device identity.  Wi-LAN further argues that even if Tiedemann does disclose allocation based on device identity, device identity is not a "characteristic associated with the data item" as required by the claim construction.  *Id.*

Defendants respond that the Tiedemann article supports Mr. Lanning's testimony and discloses TDM techniques.  Defendants argue the jury heard evidence on this issue from experts on both sides and reached a reasonable verdict.  Docket No. 491 at 5.  Defendants cite

Tiedemann's description of a cellular system using hash functions to allocate time intervals based on a mobile device's identity.  *Id.* at 3–4.  Defendants also assert that the device identity is the necessary "characteristic associated with the data item."  *Id.* at 4–5.  In Defendants' view, whether or not Tiedemann discloses TDM techniques is merely a factual dispute and therefore properly left to the jury.

Here, there is sufficient evidence from which a reasonable jury could find Tiedemann anticipated claims 2 and 5 of the '211 Patent and claims 2 and 5 of the '326 Patent and rendered obvious claim 9 of the '326 Patent and claim 11 of the '819 Patent.  Mr. Lanning testified that Tiedemann describes paging channels divided into time slots, the use of hash functions to assign those time slots, and assignment based on device identity.  7/12/2013 A.M. Trial Tr. at 44:18–45:6, 49:21–50:2.  These are all reasonable statements based on the Tiedemann article, which was admitted into evidence and which the jury was able to examine for itself.  *See* Def. Exh. 124.  Wi-LAN cross-examined Mr. Lanning on this testimony and offered rebuttal expert testimony.  The jury considered all the evidence and reached a verdict of invalidity.  The Court may not overrule the jury's assessment of the credibility of the experts or its determination of a factual dispute.

**B.     *Obviousness Under Prior Art Combinations***

Wi-LAN also challenges the verdict of invalidity with respect to certain prior art combinations.  Defendants presented expert testimony by Mr. Lanning that the combination of Tiedemann and U.S. Patent No. 6,018,528 ("Gitlin") rendered obvious claims 2, 5, and 9 of the '326 Patent, claims 2 and 5 of the '211 Patent, and claim 11 of '819 Patent.  7/12/2013 A.M. Trial Tr. at 70:15–72:6.  Mr. Lanning also testified that the combination of Gitlin and PCT

International Application Publication No. WO 95/03652 ("Gilhousen") rendered obvious the same asserted claims.  *Id.* at 74:16–21.

Wi-LAN argues Mr. Lanning's testimony concerning why a person of ordinary skill in the art would have combined the prior art references was conclusory and therefore insufficient as a matter of law.  Docket No. 482 at 5.  Wi-LAN further asserts that Mr. Lanning's testimony represents hindsight bias, and that his testimony provided no clear motivation for combining the references.  *Id.* at 5–6, 8–9.  Defendants respond that experts from both sides presented evidence of market needs and pressure to solve the problem of limited bandwidth in the wireless telecommunications industry.  Docket No. 491 at 11–12.  Further, Defendants argue evidence was presented showing the limited number of identifiable, predictable solutions to the limited bandwidth problem.  *Id.* at 12–13.  Additionally, Defendants presented testimony of collaboration between AT&T Bell Labs, Dr. Gitlin's employer, and Qualcomm, Dr. Tiedemann's employer, during the relevant time period.  *Id.* at 14.  Based on this, Defendants assert they presented sufficient evidence of the motivation to combine the prior art references.

The jury's verdict of obviousness was reasonable based on the evidence presented.  "The presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact."  *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000).  Therefore, the Court may not interfere with the jury's finding of fact unless no substantial evidence supports those findings.  *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1301 (Fed. Cir. 2009).  At the relevant time, the wireless telecommunications industry faced a known problem with a limited number of identified solutions.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) ("When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue

the known options within his or her technical grasp.").   The parties presented evidence of the limited bandwidth problem in the wireless telecommunications industry and the limited number of predictable solutions.   *See, e.g.*, 7/8/2013 P.M. Trial Tr. at 49:14–50:9, 51:12–25,  (Plaintiff's expert Dr. Wells testifying on the limited bandwidth problem and known solutions); 7/10/2013 P.M. Trial Tr. at 187:22–188:3 (Defendants' expert Dr. Wicker testifying on the need to expand cellular telecommunications systems).   Further, Mr. Lanning, the Defendants' invalidity expert, testified Bell Labs and Qualcomm, the employers of the prior art authors, were working together to solve the limited bandwidth problem in the early 1990s.  7/12/2013 A.M. Trial Tr. at 70:2–12.  Based on the evidence presented, there is no justification for the Court to interfere with the jury's finding of obviousness.

Because there is legally sufficient evidence supporting the jury's verdict of anticipation and obviousness, Wi-LAN's Renewed Motion for Judgment as a Matter of Law of No Invalidity, or, Alternatively, Motion for New Trial on Invalidity is **DENIED**.

## DEFENDANTS' MOTION TO RECOVER ATTORNEYS' FEES

The remaining Defendants, Ericsson and Sony Mobile, request that the Court declare this an exceptional case and award them attorneys' fees under 35 U.S.C. § 285.

### APPLICABLE LAW

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."   35 U.S.C. § 285 (2006).   When determining whether to award attorney fees, a court engages in a two-step process.  *Forest Labs, Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003).   First, a court determines whether the prevailing party has proved by clear and convincing evidence that the case is exceptional; and second, if the case is exceptional, a court must then

determine "whether an award of attorney fees is justified."  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915–16 (Fed. Cir. 2012).

A case may be considered exceptional when there is "some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions."  *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  Absent such conduct, an exceptional case may only be found if "both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless."  *Id.*

## ANALYSIS

Defendants first argue this case is exceptional because of Wi-LAN's vexatious litigation conduct.  Specifically, Defendants assert that Wi-LAN's business model is based on serial litigation intended to extract licensing fees below the cost of defending litigation, that Wi-LAN's trial strategy relied on the flawed testimony of noncredible expert witnesses, and that Wi-LAN unnecessarily increased the costs of defending this lawsuit.  Docket No. 475 at 2–11.  Wi-LAN contends Defendants are misrepresenting its business model.  Docket No. 484 at 4.  Wi-LAN asserts it is in the business of licensing intellectual property, where litigation is sometimes required to protect its property rights.  *Id.* at 5–7.  Wi-LAN further argues that Defendants' disagreement with its experts' opinions does not constitute litigation misconduct and that it did not unnecessarily multiply the costs of litigation.  *Id.* at 9–15.

None of Wi-LAN's actions cited by Defendants show misconduct that warrants the award of attorneys' fees.  *Cf. Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013) (finding plaintiff's strategy of repeatedly suing and withdrawing claims on the

eve of trial over the course of a decade to be a vexatious litigation strategy); *MarcTec*, 664 F.3d at 919–20 (upholding exceptional case finding where plaintiff misrepresented the law of claim construction and the court's adopted claim construction and relied on expert testimony "that failed to meet even minimal standards of reliability"); *Eon-Net LP v. FlagstarH Bancorp*, 653 F.3d 1314, 1324–26 (finding litigation misconduct where plaintiff destroyed relevant documents prior to litigation, engaged in bad faith claim construction, and showed a "lack of regard for the judicial system").   Defendants may not agree with Wi-LAN's alleged licensing framework, but they fail to show that it has been used vexatiously against either Ericsson or Sony Mobile. During license negotiations, sound business practice counsels considering litigation costs during negotiations, whether explicitly or implicitly.   Additionally, Defendants have successfully applied tools far more appropriate than a motion for attorneys' fees with regards to Wi-LAN's experts.   Defendants successfully challenged part of one expert's opinion with a *Daubert* motion. Docket No. 442.   As evidenced by a favorable jury verdict, Defendants were also successful in their use of cross-examination and rebuttal evidence and testimony.   Mere disagreement with an expert opinion, which appears to be the case here, does not render the expert so unreliable as to constitute litigation misconduct.   Defendants have failed to provide clear and convincing evidence that Wi-LAN engaged in litigation misconduct justifying an award of attorneys' fees.

Defendants also argue the Court should declare this case exceptional because Wi-LAN brought this action in subjective bad faith and because Wi-LAN's claims were objectively baseless.   Docket No. 475 at 13–15.   Defendants argue the claims were objectively baseless because Wi-LAN read out certain limitations concerning "overlay codes," "TDM techniques," and intercell interference in the asserted claims.   *Id.* at 13–14.   Here, both sides accuse the other of misinterpreting the claims and distorting the claim elements.   Reasonable expert opinions on

what are essentially factual disputes were presented by each side at trial.[1]   The claims Defendants now argue are baseless all survived to trial and jury verdict, rather than being dismissed through summary judgment or judgment as a matter of law.   *See Medtronic Navigation v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) (quoting *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991) ("[O]ne might well wonder how a case could be so frivolous as to warrant sanctions if it has sufficient merit to get to trial.")).   Accordingly, although the jury decided these factual disputes in favor of Defendants, Wi-LAN's position is not so unreasonable as to be objectively baseless.

Additionally, Defendants argue Wi-LAN's policy of serial litigation to force settlements and licensing fees indicates this action was brought in bad faith.  *Id.* at 13.  Although Defendants provided some troubling evidence that Wi-LAN had a policy of using repeated and vexatious litigation to secure patent licenses, Defendants have failed to provide evidence that Wi-LAN acted in subjective bad faith by actually implementing that policy against Ericsson and Sony Mobile.  *Cf. Eon-Net*, 653 F.3d at 1327 (finding subjective bad faith where plaintiff "had filed over 100 lawsuits against various defendants," each followed by a "demand for a quick settlement at a price far lower than the cost of litigation").   Defendants have therefore failed to provide clear and convincing evidence of repeated or vexatious litigation by Wi-LAN sufficient to declare this case exceptional.

Because Defendants have failed to show litigation misconduct by Wi-LAN, and failed to establish by clear and convincing evidence that this lawsuit was brought in subjective bad faith and on objectively baseless claims, there are insufficient grounds to declare this an exceptional case under § 285.  Accordingly, Defendants' Motion is **DENIED**.

---

[1] Indeed, Wi-LAN continues to argue its position on many of these issues in its Motion for New Trial, discussed above.

## CONCLUSION

Based on the reasoning herein, Wi-LAN's Motion for a New Trial Concerning Non-Infringement is **DENIED**.  Also, Wi-LAN's Renewed Motion for Judgment as a Matter of Law of No Invalidity is **DENIED**.   Finally, Defendants' Motion to Recover Attorneys' Fees is **DENIED**.

**So ORDERED and SIGNED this 28th day of January, 2014.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**