NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WI-LAN USA, INC. AND WI-LAN, INC.,**
*Plaintiffs-Appellants,*

v.

**ERICSSON, INC. AND TELEFONAKTIEBOLAGET LM ERICSSON,**
*Defendants-Appellees.*

---

2013-1485

---

Appeal from the United States District Court for the Southern District of Florida in No. 12-CV-23569, Judge Donald M. Middlebrooks.

- - - - - - - - - - - - - - - - - - - -

**WI-LAN, INC.,**
*Plaintiff-Appellee,*

v.

**ALCATEL-LUCENT USA, INC.,**
*Defendant,*

AND

**TELEFONAKTIEBOLAGET LM ERICSSON, ERICSSON, INC., SONY MOBILE COMMUNICATIONS AB (also known as Sony Eric-**

son Mobile Communications AB), AND SONY MOBILE COMMUNICATIONS (USA), INC. (also known as Sony Ericsson Mobile Communications (USA), Inc.),
  *Defendants-Appellants.*

———————

2013-1566

———————

Appeal from the United States District Court for the Eastern District of Texas in No. 10-CV-0521, Chief Judge Leonard Davis.

———————

Decided: August 1, 2014

———————

MATTHEW POWERS, Tensegrity Law Group, LLP, of Redwood Shores, California, argued for Wi-Lan Inc. et al. On the brief were DAVID B. WEAVER, STEPHEN M. HASH, AVELYN M. ROSS and AJEET P. PAI, Vinson & Elkins, LLP, of Austin, Texas. Of counsel was AARON MATTHEW NATHAN, Tensegrity Law Group, LLP, of Redwood Shores, California.

JOSHUA C. KRUMHOLZ, Holland & Knight LLP, of Boston, Massachusetts, argued for Telefonaktiebolaget LM Ericsson, et al. With him on the brief were JACOB K. BARON, for Telefonaktiebolaget LM Ericsson, et al.; BRUCE S. SOSTEK, RICHARD L. WYNNE, JR., J. MICHAEL HEINLEN, and JUSTIN S. COHEN, Thompson & Knight, LLP, of Dallas, Texas, for Telefonaktiebolaget LM Ericsson, et al; KARA F. STOLL and JASON L. ROMRELL, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, for Sony Mobile Communications AB, et al.

———————

Before MOORE, O'MALLEY, and WALLACH, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Wi-LAN USA Inc. and Wi-LAN Inc. (collectively, "Wi-LAN") brought two separate patent infringement suits against Ericsson Inc., Telefonaktiebolaget LM Ericsson, Sony Mobile Communications AB, and Sony Mobile Communications (USA) Inc. (collectively, "Ericsson")—one in the United States District Court for the Eastern District of Texas, No. 10-CV-0521 ("the Texas court"), and the other in the United States District Court for the Southern District of Florida, No. 12-CV-23569 ("the Florida court"). The parties asked both district courts to interpret a prior agreement between Wi-LAN and Ericsson, which allegedly limited Wi-LAN's ability to assert certain patents against Ericsson. The Texas and Florida courts granted contradictory summary judgments, which the parties appeal. For the reasons below, we *affirm* the Texas court's decision and *reverse* the Florida court's decision.

## I. BACKGROUND

The agreement at issue references two wireless standards. The Universal Mobile Telecommunications System ("UMTS") standard broadly defines third generation cellular network specifications and protocols—more commonly known as "3G." The UMTS standard consists of a number of narrower standards, including High Speed Packet Access ("HSPA"). HSPA is a wireless standard that specifically relates to the transfer of data between the network and a mobile device. Because HSPA is a subpart of UMTS, a device can be UMTS-compliant, but not HSPA-compliant. Conversely, if the device is HSPA-compliant, then it must be UMTS-compliant.

A. The Wi-LAN-Ericsson Agreement

In October 2006, Wi-LAN sent a letter to Ericsson, alleging infringement of four of Wi-LAN's patents ("the Wi-LAN Patents").[1] Wi-LAN asserted that the four patents covered all HSPA-compliant products. Because Ericsson sold HSPA-compliant products, according to Wi-LAN, Ericsson infringed the Wi-LAN Patents. Wi-LAN retained McKool Smith PC ("McKool") to assist with the assertion of its four HSPA patents. McKool, however, had previously represented Ericsson in a number of matters involving UMTS related technology, which encompasses HSPA technology. To resolve the alleged infringement and avoid a potential conflict of interest posed by McKool's representation of Wi-LAN, the parties executed the Patent Conflict and Resolution Agreement ("the PCRA") on February 13, 2008.[2] The PCRA granted certain rights to Ericsson in exchange for $100,000 as consideration. The exact scope of those rights is at issue in this appeal.[3]

Three Articles in the PCRA grant rights to Ericsson: (1) Article III, titled "Non-Assert and Release" ("the Non-Assert Provision"); (2) Article IV, titled "Patents Other Than the Wi-LAN Patents" ("the Damages Provision"); and (3) Article VII, titled "Most-Favoured Licensee Provi-

---

[1] U.S. Patent Nos. 5,282,222; 6,192,068; 6,320,897; and RE37,802.

[2] Sony has a separate contract with Wi-LAN, but the parties all agree that the language is materially the same. For simplicity, we will refer only to the LM Ericsson contract.

[3] To resolve the potential McKool conflict, the PCRA also stated that neither party could engage McKool to represent them in any dispute involving the other party.

sions" ("the MFL Provision"). The parties disagree about the scope of each of these provisions.

The Non-Assert Provision states:

> III. Section 1. Subject to the provisions of ARTICLE V hereof, WI-LAN hereby irrevocably covenants that neither WI-LAN nor its AFFILIATES will, directly or indirectly, alone or by, with or through others, cause, induce or authorize, or voluntarily assist, participate or cooperate in, the commencement, maintenance or prosecution of any ACTION seeking or having the tendency to establish any liability on the part of, or to exact any sanction or penalty, or any injunctive, equitable, legal, declaratory, administrative or other relief from or against LME, its direct or indirect distributors, AFFILIATES, CUSTOMERS or any other individual or entity arising from, by reason of, or in connection with making, using, selling, offering to sell or importing *LME PRODUCTS which would, but for this Agreement, infringe any WI-LAN PATENTS. . . .*

Joint Appendix ("J.A.") 665 (emphasis added). The parties agree that the Non-Assert Provision grants a covenant not to sue to Ericsson, but disagree over which patents or products it covers. Wi-LAN asserts that Article III grants a covenant not to sue Ericsson for alleged infringement of one or more of the claims in the four patents identified in schedule A to the agreement, designated the "Wi-LAN Patents."[4] Ericsson contends that the

---

[4] We recognize that "Wi-LAN Patents" as defined by the PCRA includes the four patents identified in schedule A as well as any related re-examinations, reissues, continuations, continuations-in-part, divisionals, and continuing prosecution applications (and divisions

Non-Assert Provision bars any claim of infringement with respect to any Ericsson product that infringes the identified Wi-LAN patents, including infringement claims premised on different patents owned by Wi-LAN—even patents unrelated to HSPA technology.

The Damages Provision states:

IV. Section 1. *With respect to patents other than the WI-LAN PATENTS (to which Article III of this Agreement applies),* and subject to the provisions of ARTICLE V hereof, WI-LAN hereby agrees that no damages shall accrue against LME, or its direct or indirect distributors, AFFILIATES and CUSTOMERS for infringement of any patents that, *on or after the EFFECTIVE DATE*, are owned or controlled by WI-LAN where liability results from making, having made, importing, using, selling, offering to sell or otherwise disposing of *LME'S UMTS/HSPA PRODUCTS* and damages shall only accrue for such making, having made, importing, using, selling, offering to sell or otherwise disposing of UMTS/HSPA PRODUCTS beginning after such time as WI-LAN commences an ACTION against LME or its AFFILIATES relating to UMTS/HSPA PRODUCTS and infringement of said WI-LAN patents.

J.A. 666 (emphases added). This provision limits the damages available to Wi-LAN from Ericsson for infringement of patents *other than* the designated Wi-LAN patents by Ericsson UMTS/HSPA-compliant products. Though the damages provision is not specifically at issue

---

there-of), requests for continued examination, provisional patent applications, and any foreign equivalents thereof. For ease of reference, however, we will refer to these as the four Wi-LAN Patents.

on appeal, both parties refer to it to support their arguments regarding the scope of the other two provisions.

Finally, the MFL provision states:

> VII. Section 1. *In the event Wi-LAN owns or controls* the licensing of *patents not already addressed under this Agreement* and which are infringed or alleged to be infringed by UMTS/HSPA PRODUCTS, WI-LAN hereby agrees that at any time during the TERM of this Agreement, at LME's request, WI-LAN will grant to LME and its AFFILIATES a non-exclusive license to make, have made, use, sell, offer for sale, lease or otherwise dispose of, and import LME PRODUCTS including UMTS/HSPA PRODUCTS and Wi-LAN agrees to grant such a license at most-favored licensee status as compared to any future licensee of WI-LAN.

J.A. 667 (emphases added). The MFL Provision allows Ericsson to request a license at "most-favored licensee status" if Wi-LAN "owns or controls" patents not already addressed in the agreement "which are infringed or alleged to be infringed by UMTS/HSPA PRODUCTS." The parties disagree about the correct interpretation of multiple parts of the MFL Provision, including whether it applies to patents that Wi-LAN acquired after the execution of the PCRA.

### B. The Texas Case

On October 5, 2010, Wi-LAN filed suit against Ericsson in the Texas court, alleging infringement of four patents ("the Texas Patents").[5] Wi-LAN acquired the Texas Patents in April 2009—over a year after the effec-

---

[5] U.S. Patent Nos. 6,088,326; 6,195,327; 6,222,819; and 6,381,211.

tive date of the PCRA. The products Wi-LAN accused in the Texas action were HSPA-compliant and UMTS-compliant devices. In its answer, as both affirmative defenses and counterclaims, Ericsson alleged that, by filing the Texas action, Wi-LAN breached the Non-Assert and MFL Provisions of the PCRA. Both parties moved for summary judgment based on those PCRA defenses and counterclaims.

On June 4, 2013, the Texas court granted Wi-LAN's motion for partial summary judgment, finding that Wi-LAN did not breach the Non-Assert and MFL Provisions in the PCRA. The Texas court first explained that, even under Ericsson's interpretation of the Non-Assert Provision, Ericsson was not entitled to summary judgment because it never conceded that, but for the PCRA, the accused products infringe the Wi-LAN Patents.[6] The Texas court then turned to the text of the Non-Assert Provision, finding Wi-LAN's interpretation of it correct. The Texas court pointed out that the Damages Provision (Article IV) specifically states that it covers suits commenced against Ericsson's UMTS/HSPA products premised on patents "other" than the Wi-LAN Patents, which the Damages Provision says is the subject of Article III. Though the Non-Assert Provision states that it applies to "LME PRODUCTS which would, but for this Agreement, infringe any WI-LAN PATENTS," the Texas court found that—based on the PCRA as a whole, including the noted language in the Damages Provision—the Non-Assert Provision unambiguously only covered the four Wi-LAN Patents. With respect to the MFL Provision, the Texas

---

[6] Ericsson attempts to get around this fact on appeal by now stipulating that the products at issue in the Texas action do infringe the Wi-LAN Patents. This stipulation is untimely, however, and we do not consider it.

court concluded that, because the Damages Provision specifically addressed the Texas patents, the MFL Provision does not apply.[7] *See Wi-LAN Inc. v. Alcatel-Lucent USA Inc.*, No. 6:10-cv-521, ECF No. 410, slip op. at 8 (E.D. Tex. June 4, 2013) (referencing J.A. 667 ("In the event Wi-LAN owns or controls the licensing of *patents not already addressed under this Agreement* . . . ." (emphasis added))).

### C. The Florida Case

On October 1, 2012—two years after Wi-LAN filed the Texas complaint and while the Texas litigation was still ongoing—Wi-LAN sued Ericsson in the Florida court, alleging infringement of three different patents ("the Florida Patents").[8] The products accused of infringement in the Florida action were not UMTS-compliant devices and the patents at issue were not the Wi-LAN Patents. Again, the patents in suit were patents which issued after the effective date of the PCRA. As it did in the Texas action, Ericsson asserted affirmative defenses and counterclaims based on the Non-Assert and MFL provisions of the PCRA.

On June 20, 2013—two weeks after the Texas court addressed the PCRA in its summary judgment order—the

---

[7] Because the trial court found that Wi-LAN's patent infringement suit was not barred, the patent infringement issues proceeded to trial, where the jury found that Ericsson did not infringe the Texas Patents. Wi-LAN separately appealed the jury's finding of no infringement, but the parties voluntarily dismissed that appeal. As a result, it is undisputed that Ericsson does not infringe the Texas Patents. The Texas controversy is only still alive because Ericsson asserts it is entitled to attorneys fees and other damages for Wi-LAN's breach of the PCRA.

[8] U.S. Patent Nos. 8,027,298; 8,249,014; and 8,229,437, issued in 2011, 2012, and 2012, respectively.

Florida court granted summary judgment in favor of Ericsson, finding that, because Ericsson was entitled to, and was willing to accept, a most-favored license pursuant to the MFL Provision of the PCRA, the controversy between Wi-LAN and Ericsson was moot. After first finding that no issue preclusion arose from the Texas court's earlier consideration of the PCRA, the Florida court concluded that, because Wi-LAN accused Ericsson of infringing some of its patents by making, importing, using, selling, or offering to sell allegedly infringing HSPA-compliant products in the *Texas litigation*, the MFL Provision enabled Ericsson to demand a license that covered the Texas Patents under most-favored licensee terms. Since Ericsson confirmed that it was willing to accept a license under the same terms as an agreement between BelAir Networks Inc. and Wi-LAN ("the BelAir License"), the Florida court concluded that Wi-LAN was obligated to grant a license on those terms to Ericsson. The BelAir License covered both the Texas Patents and the Florida Patents. Because the Florida court found that the MFL Provision entitled Ericsson to a license that covered the Florida Patents, it dismissed all of the infringement claims and entered final judgment. The Florida court did not analyze or rule upon the scope of the Non-Assert Provision.

Wi-LAN timely appealed from this judgment. In response, Ericsson appealed the Texas court's judgment as to both the Non-Assert and MFL Provisions. Because both the Texas case and the Florida case involved claims of patent infringement, we have jurisdiction under 35 U.S.C. § 1295(a)(1) (2012).

## II. Discussion

We review a district court's grant of summary judgment under the law of the regional circuit. *Lexion Med. LLC v. Northgate Techs. Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011). The Fifth Circuit and the Eleventh Circuit

both review a grant of summary judgment de novo. *See Ramirez v. Knowlton*, 542 F.3d 124, 128 (5th Cir. 2008); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2012).

This appeal requires us to interpret two provisions of the PCRA: the Non-Assert Provision and the MFL Provision. Based on the contractual choice of law provision, we apply New York contract law to interpret the terms of the PCRA. Under New York law, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms. *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (applying New York contract law). "In interpreting an unambiguous contract, the court is to consider its '[p]articular words' not in isolation 'but in the light of the obligation as a whole and the intention of the parties as manifested thereby.'" *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (quoting *Kass v. Kass*, 696 N.E.2d 174, 181 (1998)). We may not, however, consider any extrinsic evidence as to the parties' intentions if the agreement is unambiguous. *Id.*

### A. The Covenant Not to Sue

Because the Texas court found that the Non-Assert Provision only applied to the four Wi-LAN Patents, the court granted summary judgment for Wi-LAN that its claims in the Texas suit were not barred by Article III of the PCRA. On appeal, Ericsson argues that the Texas court's interpretation was wrong because the plain language of the covenant not to sue applies to all of Ericsson's HSPA *products*, not just to the four Wi-LAN Patents

specified in the agreement. Ericsson stresses that the Non-Assert Provision, as drafted, covers "*PRODUCTS* which would, but for this agreement, infringe any WI-LAN PATENTS." Appellee's Br. 34 (quoting J.A. 764–65) (emphasis added by Ericsson). According to Ericsson, limiting this provision to a covenant not to sue based on only the Wi-LAN Patents would be re-writing the contract, which New York law cautions against. Though the Texas court was concerned that Ericsson's interpretation would render the Damages Provision meaningless, Ericsson contends that, under its interpretation, the Damages Provision still encompasses a broader range of products—all UMTS/HSPA-compliant products, not just HSPA-compliant products. According to Ericsson, it sought protection for products, instead of from specific patents, because of the McKool conflict. Ericsson contends that, because McKool was the counsel that was best suited to defend it against possible future claims against UMTS/HSPA products by Wi-LAN, the broader protection for all of its products makes sense.

Wi-LAN counters that Ericsson's interpretation impermissibly focuses only on a single sentence in the entire PCRA, whereas New York law requires the court look at the contract *as a whole*. Wi-LAN argues that the remainder of the Non-Assert Provision makes clear that it only bars Wi-LAN from asserting the four specified Wi-LAN Patents because the rest of the Non-Assert Provision refers specifically to those patents. *See, e.g.*, J.A. 665 ("WI-LAN reserves and retains all rights to sue or assert against [Ericsson's] suppliers . . . that [Ericsson products], or components thereof, infringe any WI-LAN PATENTS."). According to Wi-LAN, Ericsson's interpretation is also inconsistent with the Damages Provision, which explicitly states that the Non-Assert Provision applies to the four defined Wi-LAN Patents. *See* J.A. 666 ("With respect to patents other than the WI-LAN PATENTS (to which Article III of this Agreement applies)

. . . ."). Wi-LAN further insists that New York law disfavors broad readings of covenants not to sue. Appellant's Reply Br. 24 (citing *Joao v. Cenuco, Inc.*, 376 F. Supp. 2d 380, 382–83 (S.D.N.Y. 2005) (applying New York contract law)).

We are unpersuaded by Ericsson's argument that a single sentence in Article III of the PCRA trumps the language of the rest of the contract. Although the language in the Non-Assert Provision is admittedly imprecise, we must interpret the contract "in the light of the obligation as a whole and the intention of the parties as manifested thereby." *Kass*, 696 N.E.2d at 181. The PCRA, when read as a whole, evidences the parties' clear intent to restrict the Non-Assert Provision to the four identified Wi-LAN Patents. For example, the Damages Provision, titled "PATENTS OTHER THAN THE WI-LAN PATENTS," clearly indicates that the parties intended the Damages Provision to cover UMTS/HSPA patents "other than" the four Wi-LAN patents "to which [the Non-Assert Provision] of this Agreement applies." J.A. 666.

The rest of the Non-Assert Provision further supports the intent to limit the Non-Assert Provision to the four Wi-LAN patents by referring to only those patents. *See* J.A. 665 ("WI-LAN reserves and retains all rights to sue or assert against [Ericsson's] suppliers . . . that [Ericsson products], or components thereof, infringe any WI-LAN PATENTS . . . ."); J.A. 666 ("WI-LAN (including its AFFILIATES) shall not make any claims under its WI-LAN PATENTS . . . relating to any . . . component produced by a third party using manufacturing drawings and specifications [for Ericsson]."). It would be inconsistent to grant a broad product-based covenant not to sue to Ericsson, but only apply the exceptions and clarifications to the four expressly defined Wi-LAN Patents. Ericsson's proposed interpretation of the provision would frustrate the


. . . ."). Wi-LAN further insists that New York law disfavors broad readings of covenants not to sue. Appellant's Reply Br. 24 (citing *Joao v. Cenuco, Inc.*, 376 F. Supp. 2d 380, 382–83 (S.D.N.Y. 2005) (applying New York contract law)).

We are unpersuaded by Ericsson's argument that a single sentence in Article III of the PCRA trumps the language of the rest of the contract. Although the language in the Non-Assert Provision is admittedly imprecise, we must interpret the contract "in the light of the obligation as a whole and the intention of the parties as manifested thereby." *Kass*, 696 N.E.2d at 181. The PCRA, when read as a whole, evidences the parties' clear intent to restrict the Non-Assert Provision to the four identified Wi-LAN Patents. For example, the Damages Provision, titled "PATENTS OTHER THAN THE WI-LAN PATENTS," clearly indicates that the parties intended the Damages Provision to cover UMTS/HSPA patents "other than" the four Wi-LAN patents "to which [the Non-Assert Provision] of this Agreement applies." J.A. 666.

The rest of the Non-Assert Provision further supports the intent to limit the Non-Assert Provision to the four Wi-LAN patents by referring to only those patents. *See* J.A. 665 ("WI-LAN reserves and retains all rights to sue or assert against [Ericsson's] suppliers . . . that [Ericsson products], or components thereof, infringe any WI-LAN PATENTS . . . ."); J.A. 666 ("WI-LAN (including its AFFILIATES) shall not make any claims under its WI-LAN PATENTS . . . relating to any . . . component produced by a third party using manufacturing drawings and specifications [for Ericsson]."). It would be inconsistent to grant a broad product-based covenant not to sue to Ericsson, but only apply the exceptions and clarifications to the four expressly defined Wi-LAN Patents. Ericsson's proposed interpretation of the provision would frustrate the

14                                    WI-LAN USA, INC. v. ERICSSON, INC.

clear intent of the parties to grant a covenant not to sue that covered only the four listed patents.[9]

We therefore conclude that the Texas court correctly interpreted the Non-Assert Provision as providing a covenant not to sue which is limited to the four Wi-LAN Patents only.

### B. The Most-Favored Licensee Provision

The Texas court and the Florida court issued conflicting orders regarding whether the Texas lawsuit triggered Wi-LAN's obligations under the MFL Provision. The Texas court found that the MFL Provision did not apply because the Texas Patents were specifically addressed in the Damages Provision, but did not address whether the MFL Provision applied to patents Wi-LAN acquired after the execution of the PCRA. The Florida court, on the other hand, found that Wi-LAN's Texas lawsuit triggered its obligations to provide Ericsson with a license at most-favored licensee status. To make this finding, the Florida court necessarily concluded that: (1) the MFL Provision applies to patents acquired after the execution of the PCRA, as well as those Wi-LAN previously owned or controlled, and (2) the Damages Provision does not cover

---

[9] As a practical matter, moreover, under Ericsson's interpretation, Ericsson could just stipulate that a product infringes one of the Wi-LAN Patents and assert that the covenant not to sue applies to all activities relating to the products. Oddly, if Wi-LAN contested that stipulation, rather than argue that its products do not infringe, Ericsson would have the burden of proving that its products infringe Wi-LAN's patent. Ericsson's argument that it sought protection for its products because of the McKool conflict is illogical; McKool would presumably also be the counsel best suited to represent Ericsson in this backwards infringement case.

the Texas Patents. *See* J.A. 667 ("In the event Wi-LAN *owns or controls* the licensing of *patents not already addressed under this Agreement* . . . ." (emphases added)).

Wi-LAN argues that the MFL Provision only applies to patents owned or controlled as of the date of the PCRA. Wi-LAN explains that, although other sections of the PCRA specifically account for patents acquired in the future, the MFL Provision does not do so. According to Wi-LAN, the absence of language specifically accounting for later acquired patents indicates that they are not included in the MFL provision. Wi-LAN also argues that New York courts have interpreted similar present tense language in contractual provisions to exclude future activities. According to Wi-LAN, moreover, the "in the event" language does not alter the scope of the MFL Provision because the PCRA, read as a whole, clearly indicates that the MFL Provision only applies to the patents Wi-LAN had when it executed the PCRA. Ericsson contends that the plain language of the MFL Provision applies to all of Wi-LAN's patents, whether they are owned as of the effective date of the PCRA or are later acquired. Ericsson insists that, even though the MFL Provision uses present tense verbs, the MFL Provision also contains the conditional "in the event" language. According to Ericsson, under grammatical rules, the conditional statement means that the present tense verbs refer to presently held *and* later acquired patents. *See* Oral Argument at 54:61, *Wi-LAN USA, Inc. v. Ericsson, Inc.*, 2013-1485, available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2013-1485.mp3 ("[G]rammatical rules say that, when you put a present tense verb in a conditional sentence, it contemplates the future.").

We agree with Wi-LAN that it is clear the parties intended the MFL Provision to only cover patents Wi-LAN owned or controlled as of the effective date of the PCRA. The MFL Provision uses the present tense to refer to

patents that "WI-LAN *owns* or *controls*." J.A. 667. Under New York law, the use of the present tense means that the MFL Provision does not apply to later acquired patents. *See Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 361 F. Supp. 2d 210, 215 (S.D.N.Y. 2005) (applying New York law and finding that the present tense word "is" did not apply to later acquired patent rights); *see also VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 130 (2d Cir. 2001) (applying New York law) ("The Release's reference to 'affiliates' and the definition of the word are stated in the present tense. Nothing in this definition indicates the inclusion of future rather than present members."). Contrary to Ericsson's arguments, the conditional phrase "in the event" does not automatically mean that present tense verbs must include future events. We are aware of no grammatical rule that requires us to change well-established New York contract law. We conclude that, in context, the parties clearly intended that the "in the event" language refer to information that is currently unknown to the parties—i.e., in the event Wi-LAN owns—as of the execution of the agreement—non-HSPA patents it could assert against Ericsson products, a MFL license will be granted to Ericsson.

This interpretation finds further support in other sections of the contract that explicitly account for later acquired patents. *See, e.g.*, J.A. 666 ("[N]o damages shall accrue against [Ericsson] . . . for any infringement of any patents that, *on or after the EFFECTIVE DATE*, are owned or controlled by WI-LAN . . . ." (emphasis added)). The fact that the PCRA uses specific terms to denote coverage of later acquired patents in some provisions implies the exclusion of later acquired patents when those terms are not used. *William C. Atwater & Co. v. Panama R. Co.*, 159 N.E. 418, 418 (1927) ("The court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if

isolated from the context, but in light of the obligation as a whole and the intention of the parties as manifested thereby."). We therefore conclude that, based on the language of the PCRA as a whole, the MFL Provision only applies to Wi-LAN's patents owned or controlled as of the effective date of the PCRA, which the Texas and Florida Patents were not.

Because we conclude that the MFL Provision does not apply to patents acquired after the execution of the PCRA, Ericsson's rights under the MFL Provision were not triggered by the Texas suit. We therefore reverse the Florida court's dismissal of Wi-LAN's infringement suit with respect to the Florida Patents. We need not address the remainder of the parties' arguments regarding the MFL Provision. We also affirm the Texas court's finding that the MFL provision did not bar Wi-LAN's Texas suit, albeit on different grounds.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the United States District Court for the Eastern District of Texas, No. 10-CV-0521.

**AFFIRMED**

As to the judgment of the United States District Court for the Southern District of Florida, No. 12-CV-23569, we reverse and remand for proceedings consistent with this decision.

**REVERSED AND REMANDED**